Matthew R. Bainer, Esq. (S.B. #220972)
Molly A. DeSario, Esq. (S.B. #230763)
Courtland W. Creekmore, Esq. (S.B. #182018)
**SCOTT COLE & ASSOCIATES, APC**
1970 Broadway, Ninth Floor
Oakland, California 94612
Telephone:   (510) 891-9800
Facsimile:    (510) 891-7030
Email:    mbainer@scalaw.com
Email:    mdesario@scalaw.com
Email:    ccreekmore@scalaw.com
Web:      www.scalaw.com

Attorneys for Representative Plaintiffs
and the Plaintiff Classes

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY GARRISON and GRACE GARRISON, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WHOLE FOODS MARKET GROUP, INC., <br><br> Defendant. | Case No. 3:13-CV-5222 VC <br><br> **CLASS ACTION** <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND MOTION TO STRIKE** <br><br> **Date:    May 29, 2014** <br> **Time:    1:30 p.m.** <br> **Room:   4, 17th Floor** <br> **Judge:   Hon. Vince Chhabria** |

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-8800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................1

II.     STATEMENT OF FACTS ..........................................................................1

III.    LEGAL ARGUMENT ................................................................................3

        A.      STANDARD OF REVIEW ..............................................................3

        B.      Plaintiffs' CLaims are not EXPRESSLY OR IMPLIEDLY PREEMPTED ...........3

                1.      Express Preemption Does Not Apply to State Claims Mimicking Federal Standards ....................................................................4

                2.      Plaintiffs' Claims Are Not Affected by Implied Preemption ....................6

                        a.      Implied Preemption Cannot Exist When Congress and the FDA Have Expressly Chosen Not to Occupy the Field. ...................6

                        b.      There Can Be No Implied Preemption Since Plaintiffs' Claims Do Not Conflict with the FDA's Enforcement Scheme. ....................7

        C.      PRIMARY JURISDICTION DOCTRINE DOES NOT WARRANT ABSTENTION ......................................................................8

        D.      PLAINTIFFS HAVE ADEQUATELY PLED plausible claims ..........................10

                1.      Plaintiffs Adequately Allege that a Reasonable Consumer Is Likely to Be Deceived by Defendant's "All Natural" Claims ..................10

                2.      Plaintiffs Need Not Plead a Plausible Definition of "Natural" .................11

                3.      Plaintiffs Have Sufficiently Pled Plausible False Advertising Claims ......13

        E.      Plaintiffs pled their claims with the required PARTICULARITY .......................15

        F.      PLAintiffs have standing to sue on behalf of all class members who purchased substantially similar products and make the same claim .....................17

        G.      INJUNCTIVE RELIEF IS AVAILABLE IN MISLEADING LABEL CLAIMS ......................................................................18

H.      PLAINTIFFS' UNJUST ENRICHMENT CLAIM SURVIVES IN CONJUNCTION WITH THE OTHER CLAIMS AND AS A STANDALONE QUASI-CONTRACT CLAIM FOR RESTITUTION ............... 19

I.      PLAINTIFFS SUFFICIENTLY PLED A COMMON LAW CLAIM FOR BREACH OF EXPRESS WARRANTY ............................................. 20

J.      PLAINTIFFS' PLED A VIABLE BREACH OF CONTRACT CLAIM .............. 22

K.      PLAINTIFFS PROVIDED NOTICE AS REQUIRED UNDER THE CLRA ...... 23

IV.   DEFENDANT'S MOTION TO STRIKE SHOULD BE DENIED ................................. 24

A.      IF THE COURT IS INCLINED TO GRANT ANY PORTION OF DEFENDANT'S MOTION, PLAINTIFFS SHOULD BE GIVEN LEAVE TO AMEND ........................................................................................ 25

III.    **CONCLUSION** ........................................................................................ 25

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

# TABLE OF AUTHORITIES

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

## Cases

*Allen v. ConAgra Foods, Inc.*,
    2013 U.S. Dist. LEXIS 125607 (N.D. Cal. 2013) .................................................... 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................... 3, 10

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    No. C 10-4937 PJH, 2011 U.S. Dist. LEXIS 57348 (N.D. Cal. May 26, 2011) ...................... 9

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
    2012 U.S. Dist. LEXIS 101371 (N.D. Cal. 2012) ........................... 1, 9, 11, 12, 14, 21, 22, 23

*Astiana v. Kashi Co.*,
    291 F.R.D. 493 (S.D. Cal. 2013) ........................................................................... 12

*Astiana v. The Hain Celestial Group, Inc.*,
    905 F.Supp.2d 1013 (N.D. Cal. 2012) ....................................................................... 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 555 (2007).......................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................ 3, 15

*Brazil v. Dole Food Co., Inc.*,
    935 F. Supp. 2d 947 (N.D. Cal. 2013)........................................................... 6, 8, 9, 19

*Brown v. Hain Celestial Group, Inc.*,
    913 F. Supp. 2d 881 (N.D. Cal. 2012) ................................................................... 17

*Bruno v. Quten Research Inst., LLC*,
    280 F.R.D. 524 (C.D. Cal. 2011)........................................................................... 18

*Bruton v. Gerber Products Co.*,
    961 F. Supp. 2d 1062 (N.D. Cal. 2013)..................................................................... 8

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001)................................................................................................ 7

*California v. United States*,
    512 F.Supp. 36 (N.D. Cal. 1981) ............................................... 1, 4, 7, 15, 19, 20, 24

*Campen v. Frito-Lay N. Am.*,
    No. 12-1586-SC, 2013 U.S. Dist. LEXIS 47126 (N.D.Cal. April 1, 2013) ...................... 5

*CDF Firefighters v. Maldonado*,
    158 Cal. App. 4th 1226 (2008) .............................................................................. 22

*Chae v. SLM Corp.*,
    593 F.3d 936 (9th Cir. 2010) ................................................................................... 4

*Circuit City Stores v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) ........................................................................... 22

*Committee on Children's Television, Inc. v. General Foods Corp.*,
35 Cal.3d 197 (1983) ........................................................................................... 20

*Committee on Children's Television, Inc. v. General Foods Corp.*,
35 Cal.3d 197 (1983) ........................................................................................... 20

*Conley v. Gibson*,
355 U.S. 41 (1957) ................................................................................................. 3

*Cox v. Gurma*,
No. 12-CV-06502-YGR, 2013 U.S. Dist. LEXIS 97207 (N.D. Cal. July 11, 2013) .................. 9

*Delacruz v. Cytosport, Inc.*,
No. C 11-3532 CW, 2012 U.S. Dist. LEXIS 90847 (N.D. Cal. June 28, 2012) .................... 8, 9

*Donohue v. Apple, Inc.*,
871 F. Supp. 2d 913 (N.D. Cal. 2012) ................................................................ 17

*English v. General Elec. Co.*,
496 U.S. 72 (1990) ................................................................................................. 7

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993) ........................................................................... 24

*Fid. & Deposit Co. of Md. v. Dally*,
148 Wn. App. 739 (2009) .................................................................................... 22

*First Nationwide Sav. v. Perry*,
11 Cal. App. 4th 1657 (1992) ............................................................................. 19

*First Nationwide Sav. v. Perry*,
11 Cal. App. 4th 1657 (1992) ............................................................................. 19

*Florida Lime & Avocado Growers v. Paul*,
373 U.S. 132 (1963) ............................................................................................... 7

*Forman v. Davis*,
371 U.S. 178 (1962) ............................................................................................. 25

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ................................................................................ 10

*Gilligan v. Jamco Dev. Corp.*,
108 F.3d 246 (9th Cir. 1997) ............................................................................... 3

*Hillsborough County v. Automated Med. Labs., Inc.*,
471 U.S. 707 (1985) ............................................................................................... 7

*Hines v. Davidowitz*,
312 U.S. 52 (1941) ................................................................................................. 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2011 U.S. Dist. LEXIS 110635 (N.D. Cal. Sept. 28, 2011) ................................ 20

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

-iv-
Memorandum of Points & Authorities in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss

*Ivie v. Kraft Foods Global, Inc.*,
  No. C-12-02554-RMW, 2013 U.S. Dist. LEXIS 25615 (N.D.Cal. Feb. 25, 2013) ............... 5, 6

*Jadwin v. County of Kern,*
  2007 U.S. Dist. LEXIS 81126 (E.D. Cal. 2007) ..................................................................... 24

*Jones v. ConAgra Foods, Inc.*,
  912 F. Supp. 2d 889 (N.D. Cal. 2012) ............................................................................. 9, 20

*Kane v. Chobani, Inc.*,
  2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19, 2013) ................................................. 13

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ........................................................................................... 16

*Keith v. Buchanan*,
  173 Cal. App. 3d 13 (1985) ................................................................................................ 21

*Khasin v. Hershey Co.*,
  U.S. Dist LEXIS 161300 (N.D. Cal. November 9, 2012) ...................................................... 19

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) .............................................................................................. 3

*Koh v. S.C. Johnson & Son, Inc*,
  2010 U.S. Dist. LEXIS 654 (N.D. Cal. Jan. 5, 2010) ........................................................... 17

*Kosta v. Del Monte Corporation*,
  2013 U.S. Dist. LEXIS 69319 (N.D. Cal. May 15, 2013) ...................................... 13, 17, 19

*Lam v. Gen. Mills, Inc.*,
  859 F. Supp. 2d 1097 (N.D. Cal. 2012) .............................................................................. 21

*Larsen v. Trader Joe's Co.*,
  2012 U.S. Dist. LEXIS 162404 (N.D. Cal. June 14, 2012) ................................................... 20

*Lazar v. Trans Union, LLC*,
  195 F.R.D. 665 (C.D. Cal. 2000) ........................................................................................ 24

*Lectrodryer v. SeoulBank*,
  77 Cal. App. 4th 723 (2000) .............................................................................................. 19

*Leonhart v. Nature's Path Foods, Inc.*,
  No. 5:13-CV-0492-EJD, 2014 U.S. Dist. LEXIS 46413 (N.D. Cal. Mar. 31, 2014) ............ 6, 8

*Linear Technology Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007) ............................................................................................ 20

*Linear Technology Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007) ............................................................................................ 20

*Lockwood v. Conagra Foods, Inc.*,
  597 F. Supp. 2d 1028 (N.D. Cal. 2009) ........................................................................... 4, 6

*Mason v. Coca-Cola Co.*,
  774 F.Supp.2d 699 (D. N.J. 2011) ..................................................................................... 12

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

*McKell v. Washington Mutual, Inc.*,
  142 Cal. App. 4th 1457 (2006) ........................................................................... 20

*McKinniss v. General Mills, Inc.*,
  2007 U.S. Dist. LEXIS 96107 (C.D. Cal. Sept. 18, 2007) ..................................... 11

*McKinniss v. Kellog USA,* No. CV 07-2611 ABC (RCx), 2007 WL 4766060 (C.D. Cal. Sept. 9,
  2007) ..................................................................................................................... 11

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996)........................................................................................... 4, 5

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ............................................................................... 15

*Morgan v. Wallaby Yogury Co.*,
  2013 U.S. Dist. LEXIS 144959 (N.D. Cal. Oct. 4, 2013)....................................... 13

*Neal v. NaturalCare, Inc.*,
  EDCV 12-00531 DOC (OPx) (C.D. Cal. Dec 20, 2012)......................................... 16

*Paulsen v. CNF, Inc.*,
  391 F. Supp. 2d 804 (N.D. Cal. 2005) .................................................................. 3

*Pelayo v. Nestle USA, Inc.*,
  2013 WL 5764644 (C.D. Cal. 2013) ..................................................................... 11

*Perez v. Nidek Co., Ltd.*,
  711 F.3d 1109 (9th Cir. 2013) ........................................................................... 5, 8

*Pom Wonderful LLC v. Coca–Cola Co.*,
  679 F.3d 1170 (9th Cir. 2012) ............................................................................... 8

*Pratt v. Whole Foods Mkt. Cal., Inc.*,
  No. 5:12-CV-05652-EJD, 2014 U.S. Dist. LEXIS 46409 (N.D. Cal. Mar. 31, 2014) . 5, 6, 9, 19

*Rosales v. FitFlop*,
  882 F. Supp. 2d 1168 (S.D. Cal. 2012)................................................................. 15

*Samet v. P&G*,
  No. 5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432 (N.D. Cal. June 18, 2013) .......... 5, 9

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*,
  806 F.2d 1393 (9th Cir. 1986). ............................................................................ 25

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*,
  806 F.2d 1393 (9th Cir. 1986) ............................................................................. 25

*Stengel v. Medtronic*,
  704 F.3d 1224 (9th Cir.2013) ............................................................................ 4, 5

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ............................................................................... 15

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
  307 F.3d 775 (9th Cir. 2002) ................................................................................. 8

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Memorandum of Points & Authorities in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss

*Thurston v. Bear Naked, Inc.*,
    2013 US Dist. LEXIS 151490 (S.D. Cal. July 30, 2013) ...................................... 14

*Trazo v. Nestlé USA*, *Inc.*,
    2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013) ...................................... 17

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) .................................................................... 15, 16

*Vicuna v. Alexia Foods, Inc.*,
    2012 U.S. Dist. LEXIS 59408 (N.D. Cal. April 27, 2012) .................................. 19

*Von Koenig v. Snapple Beverage Corp.*,
    713 F. Supp. 2d 1066 (E.D. Cal. 2010) ...................................................... 15

*Weinstad v. Dentsply Internat. Inc.*,
    180 Cal. App. 4th 1213 (2010) ...................................................................... 21

*Werbel v. PepsiCo, Inc.*,
    2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 1, 2010)...................................... 11

*Wyeth v. Levine*,
    555 U.S. 555 (2009)...................................................................................... 4

*Yumul v. Smart Balance*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ...................................................... 16

**Federal Statutes**

21 U.S.C.
    § 343-1(b) ............................................................................................. 6, 7

21 U.S.C.
    § 337 ...................................................................................................... 7

Fed. R. Civ. P.
    8(a)(2) ...................................................................................................... 3

Fed. R. Civ. P.
    12(b)(6) .................................................................................................... 3

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

## I.   INTRODUCTION

Whole Foods Market Group, Inc. ("Whole Foods" or "Defendant"), like many of its competitors, has jumped on the "all natural" bandwagon. Unlike many of its competitors, however, Whole Foods' "all natural" food products do not consist of all natural ingredients. In fact, each of the six supposedly "all natural" baked good products Plaintiffs identify in their First Amended Complaint ("FAC") contain a synthetic substance known as Sodium Acid Pyrophosphate ("SAPP"). FAC ¶ 3. In its Motion to Dismiss ("Motion"), Defendant all but concedes that its baked goods contain SAPP, that SAPP can only be manufactured through a chemical process, and that it labeled its baked goods as "all natural" (s*ee generally,* Motion) but argues that a reasonable consumer wouldn't care that its products are partly synthetic since SAPP is a component of baking powder and a reasonable consumer would expect baked goods to contain baking powder. Motion at 15:1-2. The Motion sidesteps the fact that baking powder *can* be made with all natural ingredients (not SAPP), that all natural baking powders (and their components) have been widely-available in the United States for decades, and that Whole Foods' competitors make the same baked goods without SAPP. Finally, the Motion leaves open the question: why does Whole Foods see the need to design packaging (and the larger marketing campaign) touting the alleged "all natural" quality of them in the first place?

Defendant asks this Court to do what no other court anywhere has agreed to do: find that "all natural" food labeling claims are preempted by federal law and do an about-face from the positions it articulated in *Astiana v. Dreyer's Grand Ice Cream, Inc.,* 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. 2012) ("*Dreyer's*"), where the defendants advanced – and lost – the same arguments made here. However, since the Court's reasoning in *Dreyer's* is well-supported by every other Court in this District (*see infra*), and since Plaintiffs herein have pled each of their fraud and false advertising claims with even more particularity than required, Defendant's Motion should be denied.

## II.   STATEMENT OF FACTS

Plaintiffs' FAC describes a multi-faceted and ongoing campaign of deception, perpetrated by Whole Foods upon an unsuspecting public. *See, generally,* FAC. Plaintiffs adequately plead their

false advertising, fraud, breach of contract, breach of express warranty, and unjust enrichment claims, both on their own behalf and on behalf of classes of similarly situated consumers, all of whom purchased Whole Foods' "all natural" baked goods. *See, generally,* FAC. In their FAC, Plaintiffs allege that varieties of Defendant's gluten-free baked products (i.e., "All Natural Gluten Free Apple Pie," "All Natural Gluten Free Cheddar Biscuits," "All Natural Gluten Free Corn Bread," "All Natural Gluten Free Molasses Ginger Cookies," "All Natural Gluten Free Chocolate Cupcakes," and "All Natural Gluten Free Vanilla Cupcakes" (collectively, the "Products")) contain the synthetic substance, SAPP, despite being prominently labeled as "all natural." FAC ¶ 3.

Despite its claims, however, Whole Food's Products are not "all natural." FAC ¶¶ 50-52. Each Product contains SAPP, an odorless white powder (aka disodium dihydrogen pyrophosphate and/or disodium pyrophosphate). FAC ¶¶ 28-30. Not only is SAPP a synthetic product, but its use can lead to imbalanced levels of minerals in the body as well as bone loss, health results that run counter to the reasons why this niche market would pay more for "all natural" food in the first place. FAC ¶ 29.

Reasonable consumers are forced to rely on Whole Foods to disclose the true nature of its Products' ingredients. FAC ¶ 40. Here, Plaintiffs relied on Whole Foods' representations that the Products were "all natural" and, in turn, were motivated to pay a premium price for them. FAC ¶ 65. Had Plaintiffs known the truth, they would not have purchased the Products, instead opting for baked goods that were truly "all natural" or, if no such baked good existed, a non-natural and cheaper alternative, or would not have bought the baked goods at all. FAC ¶ 13. Whole Foods elected not to give consumers that knowing choice.

Based on, *inter alia*, the above allegations, Plaintiffs assert the following claims on their own behalf and on behalf of others similarly situated: (1) deceptive advertising practices; (2) violation of the Consumer Legal Remedies Act; (3) common law fraud; (4) negligent misrepresentation; (5) breach of express warranty; (6) breach of contract; (7) unfair business practices; and (8) quasi-contract/unjust enrichment. *See, generally,* FAC. In response to these claims, Defendant's Motion to Dismiss ("Motion") misrepresents the lenient federal pleading standard, misapplies inapposite and unpublished case law, and prematurely argues issues more properly before this Court at class

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

certification or summary adjudication/judgment. As such, the Motion should be denied. In the alternative, Plaintiffs should be allowed to amend their Complaint.

## III.   LEGAL ARGUMENT
### A.   STANDARD OF REVIEW

A Complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A Rule 12(b)(6) motion only tests the sufficiency of the complaint and not any extrinsic evidence. *Paulsen v. CNF, Inc.*, 391 F. Supp. 2d 804, 807 (N.D. Cal. 2005). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*") (quoting *Twombly* at 570). Where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claims are facially plausible. *Id.* at 678 (citing *Twombly* at 555). Claims are also facially plausible if the pleader alleges "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the plaintiff's claim. *Twombly* at 556.

Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor" and are "rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). Furthermore, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

### B.   PLAINTIFFS' CLAIMS ARE NOT EXPRESSLY OR IMPLIEDLY PREEMPTED

Whole Foods argues that Plaintiffs' claims are either impliedly preempted under the Food, Drug and Cosmetic Act ("FDCA") or expressly preempted under the Nutritional Labeling and Education Act ("NLEA"). However, Defendant does not cite one single food labeling case where an "all natural" claim has ever been preempted because there isn't one.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL.: (510) 891-9800

Preemption is fundamentally a question of Congressional intent. *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation marks and citations omitted).

This Court must analyze a preemption claim with the presumption that unless a "clear and manifest purpose of Congress" exists, federal acts should not supersede the historic police powers of the States. *Wyeth*, 555. U.S. at 565; *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484-85 (1996). As Whole Foods is the "Part[y] seeking to invalidate state law based on preemption," it "bears the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Stengel v. Medtronic*, 704 F.3d 1224, 1228 (9th Cir.2013) (en banc).

### 1.    Express Preemption Does Not Apply to State Claims Mimicking Federal Standards

Plaintiffs' claims are not expressly preempted because they seek to enforce state laws with obligations identical to those imposed by the FDCA. In 1990, NLEA added express preemption provisions for state laws that create any requirement for nutritional labeling that is not identical to the FDCA's requirements. *See* 21 U.S.C.S. § 343-1. However, general state law claims that borrow legal standards from the FDCA and the FDA's interpretations thereof are not expressly preempted; indeed, the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted." *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1032 (N.D. Cal. 2009) (referring to Note 1 of 21 U.S.C.S. § 343-1 regarding Construction). NLEA's preemption provision does not mention California's UCL, FAL or CLRA. Moreover, these California laws do not create any requirement that is different from, or adds to, the requirements under the FDCA or the FDA's regulations or policies implementing the FDCA. Thus, Plaintiffs' state law claims merely borrow the standards provided by the FDCA and the FDA.

In a series of cases, the United States Supreme Court has confirmed that a state law claim which relies on a standard consistent with the FDCA may not be preempted. In the first of this line

of cases, *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), the Supreme Court considered whether a specific provision of the FDCA preempted state law claims based upon a violation of FDA regulations enacted thereunder and determined that there was no preemption of state law claims based on standards equal to or substantially identical to requirements under federal law. *See id.* (analyzing thepreemption provision of the Medical Devices Amendments ("MDA") to the FDCA, 21 U.S.C. § 360k(a))).

Based upon Supreme Court precedent, the Ninth Circuit has reiterated the rule that the FDCA "does not preempt a state-law claim for violating a state-law duty that parallels a federal-law duty under the [FDCA]." *Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1228 (9th Cir. 2013) (en banc). This rule, however, requires a state law claim to fit through a "'narrow gap' ... to escape preemption by the FDCA: '[t]he plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted by [regulations precluding requirements that differ from the FDCA's] ), but the plaintiff must not be suing because the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1120 (9th Cir. 2013).

In this case, Plaintiffs sue for violations of the FDA's stated policy, as enunciated in documents like the Consumer Update available on the FDA's website. *See* FAC ¶ 45. This Court has previously held that the FDA can effectively state its policy through informal means or drafts of regulations without finalizing a regulation. *See, e.g., Pratt v. Whole Foods Mkt. Cal., Inc.*, No. 5:12-CV-05652-EJD, 2014 U.S. Dist. LEXIS 46409 (N.D. Cal. Mar. 31, 2014) ("The FDA does have draft guidance regarding evaporated cane juice, which courts have found sufficient to state the FDA's position on the term such that a claim based on the term is not in addition to the FDA's regulations."); *Ivie v. Kraft Foods Global, Inc.*, No. C-12-02554-RMW, 2013 U.S. Dist. LEXIS 25615, at *12 (N.D.Cal. Feb. 25, 2013) (evaporated cane juice ("ECJ") claims are not preempted and could go forward under "deceptive" prong of UCL at the motion to dismiss stage); *Campen v. Frito-Lay N. Am.*, No. 12-1586-SC, 2013 U.S. Dist. LEXIS 47126, at * 10-11 (N.D.Cal. April 1, 2013) (holding that monosodium glutamate ("MSG") claims were not preempted where "an agency interprets its own regulations, even if through an informal process"); *Samet v. P&G*, No. 5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432 (N.D. Cal. June 18, 2013) (although the FDA is in the

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1   process of finalizing an official position regarding ECJ, the FDCA already regulates it); *Leonhart v.*

2   *Nature's Path Foods, Inc.*, No. 5:13-CV-0492-EJD, 2014 U.S. Dist. LEXIS 46413, at *17-18 (N.D.

3   Cal. Mar. 31, 2014) (FDA's draft guidance is sufficient to state the FDA's position on a term).

4          Courts in this district  reject the idea that unfair competition claims based on "natural" labels

5   are expressly preempted by FDA regulations. *See Pratt v. Whole Foods Mkt. Cal., Inc*., No. 5:12-

6   CV-05652-EJD, 2014 U.S. Dist. LEXIS 46409, at *19-20 (N.D. Cal. Mar. 31, 2014); *Ivie v. Kraft*

7   *Foods Global, Inc.*, C–12–02554–RMW, 2013 U.S. Dist. LEXIS 25615, at *12-13 (N.D. Cal. Feb.

8   25, 2013); *Lam v. General Mills*, 859 F. Supp. 2d 1097, 1104-05 (N.D. Cal. 2012). Because

9   Plaintiffs' claims are not mentioned in the NLEA's express preemption provision and because

10   Plaintiffs seek to enforce state laws with obligations identical to those imposed by the FDCA, their

11   claims are not expressly preempted.

12          **2.       Plaintiffs' Claims Are Not Affected by Implied Preemption**
              **a.       <u>Implied Preemption Cannot Exist When Congress and the FDA</u>**
13            **<u>Have Expressly Chosen Not to Occupy the Field.</u>**

14          In passing the NLEA amendments to the FDCA, Congress made clear that it was not

15   occupying the entire field of food labeling regulation. Indeed, Congress explicitly added a provision

16   allowing states to enact regulations that do not conflict with federal requirements. *See* 21 U.S.C.   §

17   343-1(b)-; *see also Lockwood*, 597 F. Supp. 2d at 1031 (rejecting field preemption with respect to

18   the use of the term "all natural" because the FDA's decision not to adopt a regulation regarding the

19   use of the term "natural" indicates "an intent not to occupy the field").

20          As phrased by this Court, the "intent not to impliedly preempt does not need to be inferred

21   because the preemption provisions added to the FDCA by the NLEA include an express savings

22   clause that disavows any implied preemption," which states that the NLEA "shall not be construed to

23   preempt any provision of State law, unless such provision is expressly preempted." *Lockwood v.*

24   *Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1032 (N.D. Cal. 2009) (referring to Note 1 of 21

25   U.S.C.S. § 343-1 regarding Construction).

26          Further, there is a strong presumption against federal preemption in the area of proper

27   marketing and regulation of food, as these areas are "traditionally within states' historic police

28   powers." *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 955 (N.D. Cal. 2013); *see also Florida*

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1    *Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) (States have legitimate interest in

2    regulating fraud and deception regarding food sales). In light of this historical primacy of state

3    regulation of matters of health and safety, courts can assume that "state and local regulation related

4    to [such] matters . . . can normally coexist with federal regulations." *Hillsborough County v.*

5    *Automated Med. Labs., Inc.*, 471 U.S. 707, 718 (1985). Given Congress' clear directive disavowing

6    preemption, there can be no doubt that Plaintiffs' claims are not impliedly preempted.

7

8    **b.      There Can Be No Implied Preemption Since Plaintiffs' Claims Do Not Conflict with the FDA's Enforcement Scheme.**

9    Conflict preemption occurs when it would be "impossible for a private party to comply with

10   both state and federal requirements," *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990), or where

11   the state law "stands as an obstacle to the accomplishment and execution of the full purposes and

12   objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). As discussed above, the state

13   laws at issue mirror the federal rules, so a private party can comply with both. Further, Congress has

14   explicitly allowed state laws regulating food labeling so long as they are not expressly preempted.

15   *See* 21 U.S.C.S. § 343-1(b) and Note 1 regarding Construction. Where Congress does provide for

16   express preemption, the presumption against preemption requires courts to read the clause narrowly.

17   *See Medtronic*, 518 U.S. at 485. Thus, California's laws that parrot standards of the FDCA and its

18   regulations, including the UCL, FAL and CLRA, are not obstacles to Congress's purpose and

19   objectives.

20   Plaintiffs' claims do not conflict with the FDA's authority because they are not an attempt to

21   directly enforce FDA regulations. Section 337(a) of the FDCA provides that only the United States

22   may sue to enforce compliance with the FDCA and NLEA. *See* 21 U.S.C. § 337; *cf. Buckman Co. v.*

23   *Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001). Whole Foods relies heavily on cases where the

24   plaintiffs sought to enforce the FDCA (a situation not present here), rather than those where

25   plaintiffs have sought to enforce state law claims with requirements identical to the FDCA (the

26   situation here). For instance, in *Buckman*, the Court characterized the plaintiffs' state-law claims as

27   "fraud-on-the-FDA claims." *Id.* The plaintiffs in *Buckman* did not allege any state law claims and

28   concerned themselves exclusively with the defendant's alleged failure to disclose information to the

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

FDA as part of the FDA approval process. In stark contrast, here, Plaintiffs allege that Whole Foods deceived and misled consumers - not that it deceived or misled the FDA.

To prop up its preemption argument, Whole Foods improperly relies on *Perez v. Nidek*, 711 F.3d 1109 (9th Cir. 2013), a medical devices case, which it claims is "not meaningfully distinguishable" from the instant matter. *See* Defendant's Motion at 8:14-20. Courts in this district disagree. *See Leonhart v. Nature's Path Foods, Inc.*, No. 5:13-CV-0492-EJD, 2014 U.S. Dist. LEXIS 46413, at *17-18 (N.D. Cal. Mar. 31, 2014) ("Perez... arose in the context of medical devices regulated by the FDCA and courts in this District have found that its reasoning does not apply to food labeling cases."); *see also Bruton v. Gerber Products Co.*, 961 F. Supp. 2d 1062, 1082 (N.D. Cal. 2013) (same). Whole Foods also grasps at straws by attempting to liken the holding in *Pom Wonderful* (which barred a federal Lanham Act claim, not a state law claim) to the situation here.[1] Prosecution of these claims via state laws that borrow federal standards does not conflict with the FDA's enforcement scheme, and, thus, conflict preemption does not apply.

## C. PRIMARY JURISDICTION DOCTRINE DOES NOT WARRANT ABSTENTION

Under the doctrine of primary jurisdiction, courts may abstain from deciding an issue that, *inter alia*, requires special agency expertise. *See Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). Whole Foods argues that fraud investigations relating to food labeling claims require the special expertise of the FDA and thus, the FDA must have primary jurisdiction over the claims in this case. This assertion is not only unsupported but confuses primary jurisdiction with the field preemption branch of implied preemption.

Critically, Whole Foods has not shown that this Court is incapable of determining whether Whole Foods' labels are misleading. As in many other food labeling cases in this district, "'[t]he FDA's expertise ... is not necessary to determine whether the labels are misleading [and] the

---

[1] *See Pom Wonderful LLC v. Coca–Cola Co.*, 679 F.3d 1170, 1178-79 (9th Cir. 2012). Again, courts in this district refuse to see the similarity. *See, e.g.. Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947 (N.D. Cal., 2013); *Delacruz v. Cytosport, Inc.*, No. C 11-3532 CW, 2012 U.S. Dist. LEXIS 90847, at *23-24 (N.D. Cal. June 28, 2012); *Khasin v. Hershey Co.*, No. 12-cv-01862-EJD, 2012 U.S. Dist. LEXIS 161300 (N.D.Cal. Nov. 9. 2012).

reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve.'" *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, at *7 (N.D. Cal. 2012) (internal citation omitted); *see also Brazil,* 935 F. Supp. 2d at 953 (declining to abstain in claims of violation of FDA regulations and guidance concerning "all natural," fresh, antioxidant, and other nutrient claims); *Astiana v. Ben & Jerry's Homemade, Inc.,* No. C 10-4937 PJH, 2011 U.S. Dist. LEXIS 57348 at *15 (N.D. Cal. May 26, 2011) ("*Ben & Jerry's*") (declining to abstain where the court had to determine whether defendant's "All Natural" claims were misleading); *Delacruz v. Cytosport, Inc.*, No. C 11-3532 CW, 2012 U.S. Dist. LEXIS 90847, at *23-24 (N.D. Cal. June 28, 2012) ("FDA's expertise . . . is not needed to determine whether the labels are misleading."); *Samet v. P&G*, No. 5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432 (N.D. Cal. June 18, 2013) (deceptive labeling allegations do not require FDA expertise as "every day courts decide whether conduct is misleading."). Since Whole Foods has not shown (nor could it), that this Court cannot and should not determine whether its "All Natural" claims are misleading, Plaintiffs' allegations must not be barred by the doctrine of primary jurisdiction.

Whole Foods mistakenly points to *Cox v. Gurma*, No. 12-CV-06502-YGR, 2013 U.S. Dist. LEXIS 97207 (N.D. Cal. July 11, 2013) as an example of a food labeling case barring "natural" claims under the doctrine of primary jurisdiction. While the court in *Cox* did refer a "natural" claim to the FDA under the primary jurisdiction doctrine, the facts of that case are totally different from those at play here. As the court in *Pratt v. Whole Foods Mkt. Cal., Inc.* so aptly stated: "The question in *Cox* focused specifically on whether foods containing GMO or bioengineered ingredients could be labeled 'natural,' something which both parties agreed the FDA had not yet addressed, and an issue which is not raised in the current case." *Pratt v. Whole Foods Mkt. Cal., Inc.*, No. 5:12-CV-05652-EJD, 2014 U.S. Dist. LEXIS 46409, *23-24 (N.D. Cal. Mar. 31, 2014). Unlike in *Cox*, here, the FDA <u>has</u> issued guidance regarding the meaning of "natural" with respect to food labeling claims and, specifically, whether synthetic ingredients could properly fall under the "natural" umbrella. *See* FAC ¶ 45.

Whole Foods' reliance on *Astiana v. The Hain Celestial Group, Inc.*, 905 F.Supp.2d 1013 (N.D. Cal. 2012) ("*Hain Celestial Group*") is also misplaced because that case involved a "natural"

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1   label on cosmetic products. While the FDA has issued policy guidance regarding a "natural" claim

2   on food labels, it has never done so for cosmetics. *Compare* 21 C.F.R. pt. 101 (regulations governing

3   food labels) *with* 21 C.F.R. pt. 701 (regulations governing cosmetic labels). Thus, abstention in *Hain*

4   *Celestial Group* was entirely appropriate. Contrasting *Hain Celestial Group* with cases like *Kosta*

5   highlights why abstention is not warranted here. *See Kosta v. Del Monte Corp.*, No.: 12-cv-01722-

6   YGR, 2013 U.S. Dist. LEXIS 69319 (N.D. Cal. May 15, 2013). In *Kosta*, plaintiffs sued regarding

7   canned tomatoes that were labeled "all natural" or "100% natural" but which contained calcium

8   chloride or citric acid. *See id.* Because the FDA had issued some policy guidance regarding the term

9   "natural," the court refused to abstain from considering the plaintiffs' claims. *Id.* at *31.[2] Since this

10   Court is clearly able to determine whether a food label was misleading, abstention is not appropriate

11   either.

12           **D.**     **PLAINTIFFS HAVE ADEQUATELY PLED PLAUSIBLE CLAIMS**

13               **1.**     **Plaintiffs Adequately Allege that a Reasonable Consumer Is Likely to Be Deceived by Defendant's "All Natural" Claims**

14           Plaintiffs' false advertising claims are governed by the "reasonable consumer" test, meaning

15   they must, at the pleading stage, allege that "members of the public are likely to be

16   deceived." *Williams*, 552 F.3d at 938; *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). As

17   the seminal *Ashcroft v. Iqbal* decision explained, **"[t]he plausibility standard is not akin to a**

18   **'probability requirement,'** but it asks for more than sheer possibility that a defendant acted

19   unlawfully." *Iqbal*, at 678 (emphasis added). Whether a practice is actually "deceptive, fraudulent, or

20   unfair" is generally a question of fact, and therefore ***not appropriate for resolution on the***

21   ***pleadings***. *See Williams*, 552 F.3d at 938-40 (emphasis added). To overcome a plausibility attack,

22   plaintiffs need not prove actual deception. *Freeman*, 68 F.3d at 938. Instead, plaintiffs must only

23   show that a reasonable consumer – someone of "ordinary intelligence" (as opposed to someone with

24   a particular understanding of synthetic leavening agents, for example) – likely *could* have been

25   misled. *Id.* Only when a challenged advertisement, on its face, demonstrates that a plaintiff could not

26

27                                          

28         [2]   (referring to FDA's informal policy, as stated on its website at http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm (last visited May10, 2013)).

1   possibly prove that a reasonable consumer would likely be deceived may a court decide the issue of

2   deceptiveness as a matter of law on a motion to dismiss. *Williams*, 552 F.3d at 939.[3]

### 2.      Plaintiffs Need Not Plead a Plausible Definition of "Natural"

4   Defendant complains that Plaintiffs offer inconsistent meanings of the word "natural."

5   Plaintiffs need not prove, however, that the definition of "natural" as set forth in their FAC is one a

6   reasonable consumer would use during the pleading stage. Such a requirement is contrary to the

7   weight of authority, including the decision in *Dreyer's*, 2012 U.S. Dist. LEXIS 101371.

8   Courts in this district have rebuffed the idea that a defendant's disagreement with the pled

9   meaning of "natural" can defeat a plaintiff's claims on a motion to dismiss. *Hain Celestial Group* at

10  *31. Here, Defendant's entire argument hinges primarily on one case: *Pelayo v. Nestle USA, Inc.*,

11  2013 WL 5764644 (C.D. Cal. 2013) ("*Pelayo*") where Judge Walter of the Central District fashioned

12  – of whole cloth apparently – a novel obstacle for consumers wishing to plead a false advertising

13  claim. According to Judge Walter, plaintiffs must provide a workable definition of the term "natural"

14  to plausibly plead that a reasonable consumer was deceived by an "all natural" claim. Putting aside

15  the fact that this requirement has <u>no</u> legal precedent, Plaintiffs actually meet the *Pelayo* requirement.

16  Here, Plaintiffs <u>do</u> have a determination from the FDA that the ingredient at issue is, in fact, <u>not</u>

17  <u>natural</u>. FAC ¶ 45. As explained below (*see* Section III(B)(3), *infra*), in what is the only ruling of its

18  kind, the FDA has publicly proclaimed that SAPP is not, and can never be, "all natural."[4] Thus,

19  although in clear contravention of all other authority including *Dreyer's*, Plaintiffs nevertheless meet

20  *Pelayo*'s requirements. FAC ¶¶ 44-49.

21  Defendant's reliance on *Werbel v. PepsiCo, Inc.*, 2010 U.S. Dist. LEXIS 76289 (N.D. Cal.

22  July 1, 2010) and *McKinnis* is also misplaced, given that the challenged terms therein (i.e., "Fruit

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

---

[3] The facts in *McKinnis* illustrate the low level of plausibility required and, thus, the rare occasion courts find it lacking at the pleading stage. *McKinniss v. Kellog USA*, No. CV 07-2611 ABC (RCx), 2007 WL 4766060 (C.D. Cal. Sept. 9, 2007) (a reasonable consumer would not believe the words or round shape of "Froot Loops" suggested fruit was actually in the product).

[4] November 16, 2011 U.S. Food and Drug Administration Warning Letter to Alexia Foods, Inc. Exhibit "A" to Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss ("RJN"), also available at http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm281118.htm.

1   Loops" and "Crunch Berries"), unlike here, allow for multiple meanings or no real meaning at all.

2   Moreover, Defendant's use of *Mason v. Coca-Cola Co.,* 774 F.Supp.2d 699, 705 (D. N.J. 2011)  is

3   off-point.  Plaintiffs do not allege that they relied on any FDA regulation when purchasing

4   Defendants' falsely labeled products – they allege that they relied on their interpretation of the "all

5   natural" claims thereon (which comports with every other interpretation of the meaning "all natural,"

6   including the FDA's).

7       Defendant's citation to *Astiana v. Kashi Co.,* 291 F.R.D. 493 (S.D. Cal. 2013) ("*Kashi*") for

8   the proposition that synthetic chemical ingredients allowed in "organic" food products may be

9   properly included in foods labeled as "all natural" is inapposite. First of all, in *Kashi* the court's

10  finding that "all natural" did not have any uniform definition among class members was made at

11  class certification following an extensive factual showing. It was not made on a motion to dismiss

12  based solely on the pleadings.  Moreover, the terms "organic" and "all natural" embody entirely

13  separate concepts, and Defendant labels and describes its "organic" and, purportedly, "all natural"

14  products entirely differently.[5]  "Organic agriculture is a production method that emphasizes the use

15  of renewable resources and the conservation of soil and water to enhance environmental quality."[6]

16  Although organic foods are natural by definition, the term "all natural" applies broadly to foods that

17  are minimally processed and free of synthetic ingredients. *See* Section III(D)(3), *supra*.

18      Moreover, the facts in *Kashi* are  distinguishable from the case at bar. *Kashi* involved 90

19  different products and 13 different ingredients which were marketed through differing advertising

20  campaigns. The court was also presented with evidence of disparity between the definitions of

21  natural as understood by plaintiffs, food producers, consumers, and the FDA. Additionally, the

22  products at issue contained as little as 0.01% and at most 5% of any synthetic chemical ingredient,

23  and evidence was presented that consumers would still view the products as natural despite those

24  ────────────────────

25  [5] *See* http://www.wholefoodsmarket.com/about-our-products/product-lines/365-everyday-value ("[O]ur products  .  .  .  come  in  both  natural  and  organic  selections.");

26  http://www.wholefoodsmarket.com/about-our-products/product-lines/whole-foods-market-brand ("With natural and organic choices, we have more unique and exquisite products in development");

27  http://www.wholefoodsmarket.com/mission-values/core-values/declaration-interdependence ("We sell the Highest Quality Natural and Organic Products Available").

28  [6] *See* http://www.wholefoodsmarket.com/about-our-products/organic-food.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1   amounts. Moreover, the defendant provided a clear definition of natural on its website. In contrast,

2   Plaintiffs are only challenging the inclusion of one ingredient and one advertising claim. If given the

3   opportunity to develop an evidentiary record, Plaintiffs will show the Court that the issue of reliance

4   herein does not vary from consumer to consumer as it did in *Kashi*.

### 3.   Plaintiffs Have Sufficiently Pled Plausible False Advertising Claims

6      Plaintiffs have sufficiently pled that a reasonable consumer would have been deceived by

7   Defendant's "all natural" claims. FAC ¶¶ 40-43. Plaintiffs have also sufficiently alleged that they

8   were deceived and injured by Defendant's false representations. FAC ¶¶ 3-4. As the FAC plainly

9   alleges, all of Plaintiffs' claims are based on Defendant's repeated representations that each of the

10  Products at issue are "all natural." FAC ¶¶ 3-4; *see also* Attachment A (depicting Defendant's "all

11  natural" and "totally natural" claims on each Product's package). It is more than just plausible that

12  Plaintiffs saw and relied on these representations when they bought the products, as they allege in

13  the FAC. FAC ¶¶ 3-4; s*ee Kosta v. Del Monte Corporation*, 2013 U.S. Dist. LEXIS 69319, *37

14  (N.D. Cal. May 15, 2013) (finding plausible that a reasonable consumer would rely on "front of the

15  package" labeling claims like "fresh," "all natural," and "a natural source of antioxidants" and, after

16  not identifying any chemical preservatives in the ingredients, believe that the product is fresh cut

17  fruit and thus be influenced to purchase it). Here, the fact that the Products' ingredient lists contained

18  a reference to SAPP does not change a reasonable consumer's plausible reliance on Defendant's "all

19  natural" claims since that consumer would not be expected to know that SAPP is a synthetic

20  substance.[7] FAC ¶¶ 40-42; *see also Williams,* 552 F.3d at 939 ("the statement that Fruit Juice Snacks

21  was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers

22  as a claim that all the ingredients in the product were natural, which appears to be false"); s*ee,*

23  *generally, Dreyer's* (finding a reasonable consumer could have expected that defendant would use

---

[7] For this reason, Defendant's citations to *Morgan v. Wallaby Yogury Co.,* 2013 U.S. Dist. LEXIS 144959 (N.D. Cal. Oct. 4, 2013) and *Kane v. Chobani, Inc.,* 2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19, 2013) are inapposite. In those cases, the plaintiffs' claims that they would not have purchased the products if they had known they contained sugar was contradicted by the fact that the ingredients list disclosed the presence of sugar. Here, Plaintiffs allege that, whether they read the ingredient list or not, they would not have known that SAPP was not natural.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

Memorandum of Points & Authorities in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss

1   all-natural alkalizing agents in processing the cocoa contained in its premium ice cream even if non-

2   natural agents were commonly used and when its ingredient list did not specify how the cocoa was

3   alkalized); *Thurston v. Bear Naked, Inc.*, 2013 US Dist. LEXIS 151490, *26-27 (S.D. Cal. July 30,

4   2013) (finding plaintiffs' sufficiently showed that defendant's "100% natural" claims were not just

5   plausible *but materially false and certifying the class of consumers deceived by them*).

6   Furthermore, Plaintiffs *plausibly* allege that SAPP is not an "all natural" ingredient. FAC ¶

7   29. Although no hard and fast definition is required at the pleading stage, *see* Section III(B)(3) *infra*,

8   the widely accepted understanding of the term "all natural" is consistent among many authorities,

9   including the FDA, USDA and Webster's Dictionary: "natural" means derived from nature and

10  thereafter minimally processed. FAC ¶¶ 44-49. As the FDA specifically proclaimed in its November

11  16, 2011 warning letter to Alexia Foods Inc., **SAPP is not natural**.[8] Indeed, as Plaintiffs' FAC

12  clearly alleges, SAPP can only be created by humans through a chemical process and therefore

13  cannot be considered "natural" under any definition of the word.[9] FAC ¶¶ 29, 46.

14  Defendant argues that Plaintiffs fail to explain why a reasonable consumer would not

15  expect baking powder in cupcakes and cookies. Motion at 15. *This is a red herring;* the relevant

16  question is whether reasonable consumers would expect Defendant's products, touted as "all

17  natural," to contain the synthetic ingredient, SAPP, and the FAC plausibly pleads that they would

18  not. FAC ¶ 48-49. Defendant's argument that because SAPP is commonly used as a leavening agent,

19  any reasonable consumer purchasing a baked good would expect to find SAPP in it has been wholly

20  rejected by courts in this district. As the court observed in *Dreyer's*, Defendant's explanation is

21  "problematic because, even if [an ingredient] is commonly used, that does not necessarily mean

22

23  [8] In the only ruling of its kind, the FDA warns Alexia's CEO that the use of the phrase "all

24  natural" on its Roasted Red Potatoes & Baby Portabella Mushrooms product was a misbranding violation of 21 U.S.C. 343(a)(1), because the product contained disodium dihydrogen pyrophosphate (aka SAPP). FAC ¶ 4. That the FDA identifies the SAPP used in Alexia's product as a preservative

25  (versus a leavening agent) has no bearing on its synthetic nature which remains constant regardless of how it is used.

26  [9] Plaintiffs note several similar, workable definitions of "natural" in their FAC to show that, regardless of the particular definition this Court ultimately adopts, a reasonable consumer would

27  believe that "natural" means, at bottom, derived from nature. FAC ¶¶ 44-49. Whether the Court accepts one of the definitions noted in Plaintiffs' FAC or crafts its own, such a decision is improper

28  now and should be deferred until the summary judgment phase.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

Memorandum of Points & Authorities in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss

that a reasonable consumer would expect it to be used – *i.e.*, normally used does not necessarily imply normally expected; a reasonable consumer may not have the same knowledge as, *e.g.*, a commercial manufacturer." *Dreyer's* at *32. Indeed, a reasonable consumer would expect Whole Foods to use "all natural" leavening agents (e.g., Glucono-Delta Lactone) – which are widely available and used by Defendant's direct competitors – in its "all natural" Products.

### E.   PLAINTIFFS PLED THEIR CLAIMS WITH THE REQUIRED PARTICULARITY

Plaintiffs' allegations regarding the falsity of Defendant's "all natural" misrepresentations satisfy the particularity requirement found in FRCP 9(b) because the "who," "what," "when," "where," and "how" of the alleged fraud are set forth in detail in the FAC. *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097 (9th Cir. 2003); s*ee, generally,* FAC. A complaint is sufficiently plausible when the facts rise "above mere speculative level." *Twombly,* 550 U.S. at 555, 570. To satisfy Rule 9(b)'s particularity standard, the allegations must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'"[10]

Here, Plaintiffs have adequately alleged fraud by, among other things, (1) providing reproductions of the labeling claims at issue, (2) stating the time period of Defendant's advertising campaign, and (3) providing facts about how Defendant misrepresented the benefits of its products. *See, generally,* FAC; *see also Rosales v. FitFlop,* 882 F. Supp. 2d 1168, 1175-76 (S.D. Cal. 2012); *Von Koenig v. Snapple Beverage Corp.* 713 F. Supp. 2d 1066 (E.D. Cal. 2010). Plaintiffs have also specifically alleged that they purchased Defendant's products on multiple occasions at various Whole Foods stores in San Francisco, California in the past several years (including during the Class Period, defined as November 8, 2009 through the present), that the products they bought were

---

[10] *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam). "[A] pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

labeled with Defendant's "all natural" claim, and that they contained SAPP. FAC ¶¶ 8, 10, 19. The FAC also alleges that Plaintiffs read and relied on Defendant's "all natural" claims in making their purchases and attaches six pages of photographs depicting the offending claims on the labels for the products in question. FAC ¶ 3; Attachment A. As such, Plaintiffs' pleading plainly sets forth the "who," "what," "when," "where," and "how" of the alleged fraud, giving Defendant more than enough information to mount a defense.

Defendant argues that Plaintiffs did not plead facts regarding when and where they bought the Products or whether the packaging remained consistent throughout the class period. Motion at 18-19. Defendant cites to several inapposite cases to support these arguments but none of them hold that such facts must be pled to meet Rule 9(b)'s standard. *See Dreyer's* at *20-21 (pleadings sufficient when plaintiffs merely allege that they would not have purchased the product without the defendant's false representations on which they relied). For example, Defendant inexplicably cites to *Yumul v. Smart Balance*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010) where the plaintiff failed to meet the particularly requirement because the "packaging [of the butter spread at issue] may have changed over the course of ten and a half years, [and] the complaint does not adequately identify the packaging that Yumul saw and on which she relied." *Yumul*, 733 F. Supp. 2d at 1124.  Plaintiffs' FAC, however, attaches clear photographs depicting the labels upon which Plaintiffs relied. FAC at Attachment A.

Details about Plaintiffs' individual experiences are not  required under the Unfair Competition Law ("UCL") and the Consumer Legal Remedies Act ("CLRA"). Under the UCL and CLRA, injury is established by showing *that members of the public* are likely to be deceived. *Williams*, 552 F.3d at 938; *see also Neal v. NaturalCare, Inc.,* EDCV 12-00531 DOC (OPx), Doc. 44 Slip Op. at 10 (C.D. Cal. Dec 20, 2012) (Ex. "B" to RJN).[11] This is an objective test that does not require Plaintiffs to plead facts about their personal experiences. *Id.*

---

[11] Defendant makes a useless comparison between this case and two cases where the plaintiffs *never attempted to plead a fraud cause of action*. *See Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009), *Vess,* 317 F.3d at 1103.  Indeed, the main issue in *Kearns* and *Vess* was whether the plaintiffs were obligated to satisfy fraud pleading requirements for their non-disclosure

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1    For these reasons, the Court should deny Defendant's Motion to Dismiss for lack of

2    particularity under FRCP 9(b).

3

4    **F.    PLAINTIFFS HAVE STANDING TO SUE ON BEHALF OF ALL CLASS MEMBERS WHO PURCHASED SUBSTANTIALLY SIMILAR PRODUCTS AND MAKE THE SAME CLAIM**

5

6    Plaintiffs have standing to pursue claims against Whole Foods for products they personally

7    did not purchase, so long as "the products and alleged misrepresentations are substantially similar,"

8    meaning (1) the same "kind" of product and (2) the same alleged labeling issue. *Brown v. Hain*

9    *Celestial Group, Inc*., 913 F. Supp. 2d 881, 889 (N.D. Cal. 2012). Where product composition is

10   especially important to the plaintiff's claims, courts also require the products to be "comprised of

11   largely the same ingredients." *Trazo v. Nestlé USA, Inc.*, 2013 U.S. Dist. LEXIS 113534, *42 (N.D.

12   Cal. Aug. 9, 2013). "Where the allegations indicate sufficient similarity between the products, any

13   concerns regarding material differences in the products can be addressed at the class certification

14   stage." *Kosta*, 2013 U.S. Dist. LEXIS 69319, at *50 (citing *Donohue v. Apple, Inc.*, 871 F. Supp. 2d

15   913, 922 (N.D. Cal. 2012)).

16   Pursuant to this standard, standing has been found not only when the products at issue

17   spanned different product lines, but also when they were manufactured by **different** companies. *See,*

18   *e.g., Donohue,* 871 F. Supp. 2d at 918 (finding plaintiff had standing to assert claims on behalf of

19   purchasers of other iPhone products); *Kosta,* 2013 U.S. Dist. LEXIS 69319, *51 (finding Del

20   Monte's single serving fruit products all sufficiently similar to products purchased by plaintiffs);

21   *Dreyer's* at *37-38 (finding Dreyer's/Edy's and Haagen-Daz's ice creams boasting "all natural"

22   claims to be substantially similar such that plaintiffs had standing to make claims against all of both

23   companies' ice cream products, not just those purchased); *Koh v. S.C. Johnson & Son, Inc*, 2010

24   U.S. Dist. LEXIS 654, *2, *6-7 (N.D. Cal. Jan. 5, 2010) (denying motion to dismiss and deferring

25   ruling on standing  until class certification where the labels on the Windex  purchased by the plaintiff

26   

27   ───────────────────────

28   claims. Unsurprisingly, the plaintiffs' pleadings did not adequately plead the elements of fraud, since they never intended to make that claim in the first place. *Id.*

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1   and the Shout stain remover not purchased by the plaintiff contained the identical challenged claim);

2   *Bruno v. Quten Research Inst., LLC,* 280 F.R.D. 524, 530-31 (C.D. Cal. 2011) (granting named

3   plaintiff standing to sue on behalf of purchasers of related products and finding that "treatises and

4   the vast majority of persuasive authority" indicate that this issue should be analyzed under Rule 23

5   rather than as a standing question). Here, the Products at issue are gluten-free baked goods that are

6   manufactured by the same defendant, labeled with the same "all natural" claim and made with the

7   same SAPP ingredient. FAC ¶ 3. At the very least, this substantial similarity between the Products

8   allows the pleading to survive until class certification.

9        Defendant's unpublished cases fail to engage in the "substantially similar" analysis required

10   in this District, save for *Miller v. Ghirardelli Chocolate Co. See* Motion at 19-22. In *Miller v.*

11   *Ghirardelli Chocolate Co.*, the court undertook the "substantially similar" analysis, but found the

12   products never bought by plaintiffs failed the test since "they look different; they have different uses

13   (baking chips, drink powders, and wafers); they have different labels and different representations on

14   packaging; and they are marketed and sold differently some are sold alongside each other, and some

15   are sold in commercial markets and others in consumer markets." *Miller v. Ghirardelli Chocolate*

16   *Co.*, 2013 U.S. Dist. LEXIS 49733, 20-24 (N.D. Cal. Apr. 5, 2013). None of these distinguishing

17   factors apply here since all of the Products at issue are gluten-free baked goods, with the same "all

18   natural" claim and the same SAPP ingredient, sold at the same Whole Foods Market stores.[12]

19        For these reasons, Plaintiffs can properly assert the same causes of action for all the Products

20   identified in the FAC, whether they purchased them or not.

21

22   **G.    INJUNCTIVE RELIEF IS AVAILABLE IN MISLEADING LABEL
        CLAIMS**

23        Whole Foods argues that Plaintiffs cannot obtain injunctive relief because they are not at risk

24   of a repeated violation in that they "do not allege any interest in purchasing the products."

25   Defendant's Motion at 22:18-19. Accepting this argument leads to the untenable conclusion that

26   _____

27        [12] Defendant also makes the conclusory argument that Plaintiffs will not be able to establish
28   typicality at the class certification stage. This issue is not ripe for resolution now and should be
     deferred until class certification. *Kosta*, 2013 U.S. Dist. LEXIS 69319 at *51

1   plaintiffs who sue for misleading product labels can never obtain injunctive relief. Obviously, this is

2   not the case. *See Pratt*, 2014 U.S. Dist. LEXIS 46409, *30-31 (N.D. Cal. Mar. 31, 2014)

3   ("Therefore, this Court finds that at this juncture, the claim for injunctive relief may proceed and will

4   not be dismissed."); *Ben & Jerry's* at *34 (claim for injunctive relief cannot be determined until

5   factual record is developed).

6        Plaintiffs' claims are distinguishable from claims where injunctive relief was denied. *See*

7   *Pratt*, 2014 U.S. Dist. LEXIS 46409, *30-31 ("Courts in this district have dismissed injunctive relief

8   claims in instances where the products at issue were discontinued"); *Brazil*, 935 F. Supp. 2d 947

9   (dismissing all claims in complaint without any specific discussion regarding plaintiff's right to

10  injunctive relief). Here, Whole Foods has not asserted that the products at issue were discontinued or

11  given any other reason why injunctive relief is improper. For these reasons, Defendant's motion to

12  dismiss this claim should be denied.

13       **H.     PLAINTIFFS' UNJUST ENRICHMENT CLAIM SURVIVES IN
            CONJUNCTION WITH THE OTHER CLAIMS AND AS A
14          STANDALONE QUASI-CONTRACT CLAIM FOR RESTITUTION**

15       Plaintiffs have properly pled their unjust enrichment claim, whether it stands alone or not.

16  Defendant argues that there is no cause of action in California for unjust enrichment. Although

17  unjust enrichment is not an independent cause of action under California law, it can be pled in the

18  alternative as a standalone restitution claim (akin to a quasi-contract claim) brought to avoid unjustly

19  conferring a benefit on the defendant.[13]

20       Defendant also argues that an unjust enrichment claim cannot be asserted if it is duplicative

21  of statutory claims. However, the courts in this district are split on this issue. *Pratt v. Whole Foods*

22  *Mkt. Cal., Inc.,* 2014 U.S. Dist. LEXIS 46409, *29 (N.D. Cal. Mar. 31, 2014). Numerous courts

23

24

25

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

[13] *Khasin v. Hershey Co.*, U.S. Dist LEXIS 161300 (N.D. Cal. November 9, 2012); *Kosta*, 2013 U.S. Dist. LEXIS 69319; *Vicuna v. Alexia Foods, Inc.*, 2012 U.S. Dist. LEXIS 59408, *3 (N.D. Cal. April 27, 2012); s*ee also Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000); *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1662–63 (1992).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1 decline to dismiss unjust enrichment claims based on quasi-contract, because it is not considered a

2 standalone claim.[14]

3      Defendant further argues that an unjust enrichment claim is for equitable relief, which can

4 only survive if Plaintiffs have no adequate remedy at law. However, an unjust enrichment claim may

5 be allowed to proceed as an alternative to statutory claims, especially where there is no evidence

6 before the Court concerning the degree to which the available legal remedies are identical to the

7 remedies available under Plaintiffs' unjust enrichment claim. *In re TFT-LCD (Flat Panel) Antitrust*

8 *Litig.,* 2011 U.S. Dist. LEXIS 110635, *54 (N.D. Cal. Sept. 28, 2011).

9      Finally, Defendant argues that Plaintiffs have failed to identify a benefit unjustly conferred

10 on Defendant. Plaintiffs' FAC clearly alleges that Defendant was unjustly enriched at the expense of

11 Plaintiffs and Class Members as a result of the unlawful conduct alleged therein. FAC ¶¶ 132-37

12 (alleging that Defendant made false claims on Products it sold to Plaintiffs, that Plaintiffs relied upon

13 those claims, and that Plaintiffs are owed restitution for the ill-gotten gains Defendant consequently

14 enjoyed). For these reasons, Plaintiffs' unjust enrichment claim survives.

15    **I.**     **PLAINTIFFS SUFFICIENTLY PLED A COMMON LAW CLAIM FOR**
16         **BREACH OF EXPRESS WARRANTY**

17      Plaintiffs have properly pled their common law claim for breach of express warranty.

18 Motions to dismiss UCL claims are rarely granted. *Williams,* 552 F.3d 934. Indeed, California courts

19 have recognized that whether a business practice is deceptive will usually be a question of fact not

20 appropriate for decision at the pleading stage.[15]

21

22

---

23

24 [14] *See, e.g., Jones v. Conagra Foods, Inc.,* 912 F. Supp. 2d 889, 904 (N.D. Cal. 2012); *Larsen v. Trader Joe's Co.,* 2012 U.S. Dist. LEXIS 162404, *18-21 (N.D. Cal. June 14, 2012); *Dreyer's* at *28-30.

25 [15] *Id.* at 938-39 (citing *Linear Technology Corp. v. Applied Materials, Inc.,* 152 Cal. App. 4th 115, 134-35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of

26 fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer" (quoting *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457,

27 1472 (2006))); *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 210 (1983) (finding demurrer inappropriate in case where parents alleged deceptive advertising of sugar

28 cereals))).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

A common law express warranty cause of action must only allege "facts sufficient to show that (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Allen v. ConAgra Foods, Inc.*, 2013 U.S. Dist. LEXIS 125607, *36 (N.D. Cal. 2013) (citing *Weinstad v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010)). Plaintiffs have done just that.

First, Plaintiffs' FAC plainly alleges that Defendant sold and advertised the Products with the "all natural" affirmations or promises and that Plaintiffs reasonably relied thereon and were resultantly injured. FAC ¶¶ 50, 110-111. Furthermore, for the same reasons stated above (*see* Section III(D)(1)), the "all natural" promise can and has been objectively defined under the reasonable consumer standard. As such, Plaintiffs have met the first prong of the test.

To satisfy the second element, the FAC need only allege facts to show the warranty formed "*part* of the basis of the bargain," which it does. FAC ¶ 110 (alleging that the "all natural" claim "became part of the basis of the bargain"). The fact that Plaintiffs never alleged that they had (or had not) read the ingredient list on the Products' packaging does not affect the analysis because this Court and the Ninth Circuit have ruled that a defendant "cannot rely on the ingredient list to correct any false or misleading statements on the front of its packaging." *Dreyer's* at *30-31; *Williams,* 552 F.3d at 939-40; ("Statements made by a manufacturer through its advertising efforts can be construed as warranty statements. A buyer does not need to show that he relied on such statements to the extent that he would not have made the purchase without them, but only that they played a role in his purchasing decision."); *Aaronson v. Vital Pharms., Inc.*, 2010 U.S. Dist. LEXIS 14160, *17-18 (S.D. Cal. 2010) (citing *Keith v. Buchanan*, 173 Cal. App. 3d 13 (1985)).

As such, Plaintiffs need not allege that they recognized the conflict between Defendant's ingredient list and the misleading "all natural" warranty to plead a proper breach of express warranty claim. Indeed, a reasonable consumer would <u>not</u> be put on notice that Defendant's Products contain synthetic ingredients simply by reading the packages' ingredient lists since those lists contain words not commonly understood by consumers (yet thoroughly understood by Defendant). *See Lam v. Gen. Mills, Inc.,* 859 F. Supp. 2d 1097, 1105 (N.D. Cal. 2012). For example, would a reasonable

Memorandum of Points & Authorities in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL.: (510) 891-9800

consumer be expected to know what SAPP is or that it's a synthetic ingredient? Plaintiffs think not, just as they think reasonable consumers would not be expected to know that Glucono-Delta Lactone is an all-natural alternative to SAPP that could have been used to leaven Defendant's products. Indeed, if the law did not take into account the hundreds, if not thousands, of polysyllabic, unpronounceable ingredients in food products, consumers would need to take a notepad to the supermarket to record ingredients and health claims on potential purchases and then go home and Google each ingredient to verify them. Tellingly, although Defendant's Motion often suggests that a reasonable consumer would not be surprised to learn baking powder was used in packaged baked goods, it never argues that they would also know what SAPP is. *See, generally,* Motion.

Finally, Plaintiffs' FAC meets the third prong of the test as it plainly alleges a breach of express warranty. FAC ¶¶ 111-112 (Defendant expressly warrants, through its advertising, that the Products are "all natural" but since those Products contain SAPP, a known synthetic ingredient, it has breached the express warranty).[16] As Defendant provides no viable reason for this claim to fail, the Court should deny its request to dismiss it from Plaintiffs' FAC.

### J. PLAINTIFFS' PLED A VIABLE BREACH OF CONTRACT CLAIM

Citing *Circuit City Stores v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002), Whole Foods correctly points out that a party is bound by the terms of a contract. In all relevant jurisdictions, a breach of a contract's terms gives rise to a claim for damages. *See* Restat. 2d of Contracts, § 236 ("Every breach gives rise to a claim for damages, and may give rise to other remedies. Even if the injured party sustains no pecuniary loss or is unable to show such loss with sufficient certainty, he has at least a claim for nominal damages."). "A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."[17]

---

[16] Although the breach of express warranty claim in *Astiana v. Dreyers* was dismissed, that claim was pled under federal law and, thus, subject to a different standard. *Dreyer's* at *6-7 (finding that a "natural" claim on ice cream products does not give any assurance that they are defect free as required under the Magnuson Moss Warranty Act).

[17] *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008); *see also Fid. & Deposit Co. of Md. v. Dally*, 148 Wn. App. 739, 745 (2009) ("To prevail on a contract claim, the

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

Plaintiffs have sufficiently alleged a breach of contract: First, "Plaintiffs and members of both classes had a valid contract…, pursuant to which Defendant was obligated to provide food products which were, in fact, 'All Natural,' as represented by Defendants." FAC ¶ 116. Second, Plaintiffs performed by purchasing the products at issue. FAC ¶¶ 10-11. Third, "Defendants materially breached their contract…by providing the Products which were not 'All Natural.'" FAC ¶ 117. Fourth, "As a result of Defendant's breaches, Representative Plaintiffs and members of both Classes were damaged." FAC ¶ 118.

Ignoring Plaintiffs' primary complaint—that the "All Natural" label is misleading, Whole Foods argues that Plaintiffs' contract claim fails because SAPP is listed as an ingredient on the label. Plaintiffs contracted to purchase an "All Natural" product but received a product with synthetic ingredients. As Whole Foods stated, contracts should be interpreted "to give effect to every part." *See* Defendant's Motion at 23:28. The contract would obviously include Whole Foods' promise to provide an "All Natural" product. Consumers do not have a duty to research every ingredient in each purchased product to validate health and nutritional claims displayed on labels. *Dreyer's* at *30-31; *Williams,* 552 F.3d at 939-40. Rather, Plaintiffs had a duty to pay for a product, and Defendants had a duty to provide the product described. Whole Foods breached that duty and caused Plaintiffs' damages. The allegations are sufficient to support a breach of contract claim.

### K.   PLAINTIFFS PROVIDED NOTICE AS REQUIRED UNDER THE CLRA

Defendant bases its request to dismiss the CLRA claim on the erroneous assumption that Plaintiffs never sent a CLRA notice letter. Although Defendant claims to have never received it, Plaintiffs sent their CLRA letter via certified mail and it was delivered on November 12, 2013.[18]

---

plaintiff must show an agreement between the parties, a party's duty under the agreement, and a breach of that duty.").

[18] Declaration of Matthew R. Bainer, Esq. in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss ¶ 3; Exhibit "A," CLRA Notice Letters with USPS Tracking Confirmation.

Memorandum of Points & Authorities in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

## IV.   DEFENDANT'S MOTION TO STRIKE SHOULD BE DENIED

Defendant moves to strike Plaintiffs' allegations regarding products they did not purchase and allegations concerning Defendant's promotional materials and websites, which Plaintiffs did not allege having read or seen prior to their purchases, on the basis that they are immaterial. Motions to strike are generally disfavored and not frequently granted for three reasons: (1) the liberal pleading standard in federal practice; (2) the fact that they are often deployed as delay tactics; and (3) the prevailing view that a case should be tried on the proofs rather than the pleadings. *Jadwin v. County of Kern,* 2007 U.S. Dist. LEXIS 81126, *3-4 (E.D. Cal. 2007). Additionally, "[i]mmaterial matter is defined as matter that 'has no essential or important relationship to the claim for relief or the defenses being pleaded.'" *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07 (1990) (reversed on other grounds). Most importantly, motions to strike are generally not granted unless it is clear that the matter to be stricken *could have no possible bearing* on the subject matter of the litigation. *Lazar v. Trans Union, LLC,* 195 F.R.D. 665, 669 (C.D. Cal. 2000). Courts must view the pleadings under attack in a light more favorable to the pleader. *California v. United States,* 512 F.Supp. 36, 39 (N.D. Cal. 1981).

Defendant's characterization of Plaintiffs' allegations as "immaterial" is faulty. First, as set forth herein (*see* Section II (F), *supra*), Plaintiffs have standing to sue for products that they did not purchase. Thus, Plaintiffs' allegations regarding unpurchased products are not immaterial and should not be stricken from their pleading. Second, the fact that Plaintiffs did not specifically allege that they individually relied on Defendant's website and advertising materials in purchasing the products does not render any allegations immaterial: Plaintiffs are bringing class claims, and Defendant's nationwide fraudulent marketing campaign is relevant to the commonality prong of Rule 23 as well as the issue of absent Class Members' reliance on Defendant's promotional materials. *Lazar,* 195 F.R.D. at 669. For these reasons, none of Plaintiffs' allegations should be stricken.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

A.   **IF THE COURT IS INCLINED TO GRANT ANY PORTION OF DEFENDANT'S MOTION, PLAINTIFFS SHOULD BE GIVEN LEAVE TO AMEND**

If any of the claims are deemed improper, they can likely be cured by a simple amendment to the pleadings.[19] Leave for such amendments is freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); s*ee also Forman v. Davis*, 371 U.S. 178, 182 (1962) (In the absence of bad faith or dilatory motives, leave be "freely given.").

Here, there is no undue delay and none of the alleged pleading deficiencies are due to any "bad faith" or "dilatory motive" on Plaintiffs' part. Moreover, Defendant will not incur any prejudice by the amendments contemplated herein as the operative pleadings provided Whole Foods with sufficient notice of the claims. Thus, if this Court finds any claims were improperly pled, Plaintiffs hereby seek leave to file a First Amended Complaint.

III.   **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court deny Defendant's Motion to Dismiss on all grounds. In the alternative, should the Court find any deficiency in their pleading, Plaintiffs request leave to file an amended pleading to cure the deficiency.

Dated: April 28, 2014

                                 **SCOTT COLE & ASSOCIATES, APC**

                    By:   /s/ Matthew R. Bainer
                          Matthew R. Bainer, Esq.
                          Attorneys for the Representative Plaintiffs
                          and the Plaintiff Classes

---

[19] *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").