SEYFARTH SHAW LLP
Jay W. Connolly (SBN 114725)
jconnolly@seyfarth.com
Giovanna A. Ferrari (SBN 229871)
gferrari@seyfarth.com
Joseph J. Orzano (SBN 262040)
jorzano@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:     (415) 397-2823
Facsimile:     (415) 397-8549

Attorneys for Defendant
WHOLE FOODS MARKET GROUP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY GARRISON and GRACE GARRISON, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WHOLE FOODS MARKET GROUP, INC.,<br><br>Defendant. | Case No. 4:13-CV-05222-VC<br><br>**DEFENDANT WHOLE FOODS MARKET GROUP, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND MOTION TO STRIKE**<br><br>Date:     May 29, 2014<br>Time:     1:30 p.m.<br>Judge:    Hon. Vince Chhabria<br>Courtroom: Courtroom 4, 17th Floor |

# TABLE OF CONTENTS

**Page**

I. Plaintiffs' Claims For Relief Should Be Dismissed ........................................................... 2

    A. Plaintiffs' Claims Should Be Dismissed Because They Are Preempted ................... 2

        1. There is No Presumption Against Preemption Here ......................................... 2

        2. Plaintiffs' Claims Are Impliedly Preempted (21 U.S.C. § 337) ....................... 2

        3. Plaintiffs' Claims Are Expressly Preempted (21 U.S.C. § 343-1) .................... 4

    B. Plaintiffs' Claims Invade The Primary Jurisdiction Of The FDA ............................. 6

    C. Plaintiffs Have Fashioned Wholly Implausible Claims ............................................. 7

        1. Plaintiffs Fail to Plausibly Allege That A Reasonable Consumer Is Likely to Be Deceived By the Challenged Labels ............................................................ 7

        2. Plaintiffs Fail to Plausibly Allege That They Were Deceived Or Injured ...... 12

    D. Plaintiffs Fail to Plead Their Claims With The Required Particularity ................... 13

    E. Plaintiffs Lack Standing To Sue For Products Not Purchased ................................ 13

    F. Plaintiffs' Prayer For Injunctive Relief Fails ........................................................... 14

    G. Plaintiffs' Unjust Enrichment Claim Fails ............................................................... 14

    H. Plaintiffs' Warranty and Contract Claims Fail ........................................................ 14

    I. Plaintiffs' Claim for CLRA Damages Fails ............................................................. 15

II. The Court should Strike Plaintiffs' Immaterial Allegations ............................................ 15

III. Conclusion ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
  2012 WL 29990766 (N.D. Cal. July 20, 2012) .......................................................... 10, 11, 14

*Astiana v. Kashi Co.*,
  2013 WL 3943265 (S.D. Cal. July 30, 2013) ................................................................... 9

*Brazil v. Dole Food Company, Inc.*,
  2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ................................................................ 12

*Buckman Co. v. Plaintiff's Legal Committee*,
  531 U.S. 341 (2001) ....................................................................................................... 2, 4

*Caldera v. The J.M. Smucker Company*,
  2014 WL 1477400 (C.D. Cal. April 14, 2014) .............................................................. 13

*Circuit City Stores v. Ahmed*,
  283 F.3d 1198 (9th Cir. 2002) ....................................................................................... 14

*Cox v. Gruma Corp.*,
  905 F. Supp. 2d 1013 (N.D. Cal. 2011) ........................................................................... 7

*CytoSport, Inc. v. Vital Pharm., Inc.*,
  894 F. Supp. 2d 1285 (E.D. Cal. 2012) ............................................................................ 8

*Duncan v. Walker*,
  533 U.S. 167 (2001) ......................................................................................................... 4

*Fraker v. KFC Corporation*,
  2007 WL 1296571 (S.D. Cal. April 30, 2007) ................................................................. 3

*Herron v. Best Buy Stores*,
  2014 WL 465906 (E.D.Cal. Feb. 14, 2014) ................................................................... 15

*Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*,
  664 F.3d 940 (D.C. Cir. 2012) ......................................................................................... 8

*Kane v. Chobani, Inc.*,
  2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) .............................................................. 12

*Kosta v. Del Monte Corporation*,
  2013 WL 2147413 (N.D. Cal. May 15, 2013) ............................................................... 11

*Larsen v. Trader Joe's*,
  2012 WL 5458396 (N.D. Cal. June 14, 2012) ............................................................... 13

*Lehman Bros. Holdings, Inc. v. Mason McDuffie Mortg. Corp.*,
   2013 WL 76285 (N.D. Cal. Jan. 4, 2013) ..................................................................................14

*Lockwood v. ConAgra Foods, Inc.*,
   597 F. Supp. 2d 1028, 1032-33 (N.D. Cal. 2009) .......................................................................3

*Mason v. Coca-Cola Co.*,
   774 F. Supp. 2d 699 (D.N.J. 2011) ..............................................................................................9

*McKinnis v. Kellogg USA, Inc.*,
   2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ............................................................................9

*Morgan v. Wallaby Yogurt Company, Inc.*,
   2014 WL 1017879 (N.D. Cal. March 13, 2014) .......................................................................14

*Neal v. NaturalCare, Inc.*
   12-CV-00531 (C.D. Cal. Dec. 20, 2012) ..................................................................................12

*Pelayo v. Nestle USA, Inc.*,
   2013 WL 5764644 (C.D. Cal. Oct. 25, 2013) .........................................................................5, 8

*Perez v. Nidek Co., Ltd.*,
   711 F.3d 1109 (9th Cir. 2013) .................................................................................................2, 4

*Pom Wonderful LLC v. Coca-Cola Co.*,
   679 F.3d 1170 (9th Cir. 2012) .....................................................................................................4

*Raffile v. Exec. Aircraft Maint.*,
   2012 WL 4361409 (D. Ariz. Sept. 25, 2012) ............................................................................15

*Red v. Kraft Foods*,
   2012 WL 5504011 (C.D.Cal. 2012) ..........................................................................................10

*Schneider v. Cal. Dept. of Corrections*,
   151 F.3d 1194 (9th Cir. 1998) ...................................................................................................15

*Stengel v. Medtronic Inc.*,
   704 F.3d 1224 (9th Cir. 2013) .............................................................................................2, 3, 4

*Swearingen v. Amazon Preservation Partners, Inc.*,
   2014 WL 1100944 (N.D. Cal. March 18, 2014) .......................................................................12

*Swearingen v. Yucatan Foods, L.P.*,
   2014 WL 553537 (N.D. Cal. Feb. 7, 2014) ...............................................................................13

*Syntek Semiconductor v. Microchip Tech., Inc.*,
   307 F.3d 775 (9th Cir. 2002) .......................................................................................................6

*Thurston v. Bear Naked, Inc.*,
   2013 WL 5664985 (S.D. Cal. July 30, 2013) ......................................................................11, 12

*U.S. v. Locke*,
    529 U.S. 89 (2000)..................................................................................................................2

*United States v. Strauss*,
    999 F.2d 692 (2d Cir. 1993) .....................................................................................................9

*Werbel v. PepsiCo*,
    2010 WL 2673860 (N.D. Cal. July 2, 2010).......................................................................9, 10

*Williams v. Gerber*,
    552 F.3d 934 (9th Cir. 2008) ..............................................................................................10, 12

**STATE CASES**

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ............................................................................................................12

*Kwikset Corp. v. Superior Court*,
    51 Cal.4th 310 (2011) .............................................................................................................12

*Lavie v. Proctor & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ...................................................................................................7

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

7 C.F.R. § 205.605(b) ...................................................................................................................6, 8

21 C.F.R. § 10.85(j) ...........................................................................................................................5

21 C.F.R. § 10.115.............................................................................................................................5

21 C.F.R. § 10.115(e).........................................................................................................................8

21 U.S.C. § 337 ..............................................................................................................................2, 3

21 U.S.C. § 341 ..................................................................................................................................3

21 U.S.C. § 343-1 ...........................................................................................................................3, 4

21 U.S.C. § 343-1(b)..........................................................................................................................3

21 U.S.C. § 360k(a) ...........................................................................................................................2

21 U.S.C. § 377 ..................................................................................................................................3

**OTHER AUTHORITIES**

Pub. L. No. 101-535, § 6(c)(1), 104 Stat 2353, 2364 (1990) ............................................................3

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs Mary Garrison and Grace Garrison (collectively, "Plaintiffs") confirm their non-viable legal theories and embrace the factual deficiencies of the First Amended Complaint ("FAC").

***First*,** Plaintiffs admit they cannot sue Whole Foods Market Group, Inc. ("Whole Foods") *because* its conduct allegedly violates the FDCA. Yet, Plaintiffs admit they "sue for violations of the FDA's state [natural] policy." These admissions alone warrant dismissal based on implied preemption.

***Second*,** Plaintiffs admit that they may only sue Whole Foods for conduct that violates the FDCA, or else such claims are expressly preempted. Yet, Plaintiffs concede that they seek to enforce meanings of "natural" that are not identical to the FDA policy. Plaintiffs also fail to address the fact that enforcing the FDA policy itself conflicts with FDA regulations and is expressly preempted.

***Third*,** Plaintiffs do not dispute the primary jurisdiction standard. They misconstrue or ignore its elements. The Court should at a minimum stay or dismiss this action until the FDA has an opportunity to act on an expected stakeholder petition.

***Fourth*,** Plaintiffs' inconsistent theories balloon when discussing plausibility. The only reasonable inference from Plaintiffs' multiple, inconsistent definitions of "natural" is that there is no uniform understanding of the term and therefore it is not capable of deceiving a significant portion of the general consuming public or of targeted consumers. While offering the many definitions, Plaintiffs admit that SAPP is permitted in organic products for the same purpose it is used in the products at issue here. They also admit that an organic product <u>is natural</u>. Moreover, Plaintiffs admit that they do not allege their own understanding of "natural"; this dooms Plaintiffs' consumer protection, warranty, and negligent misrepresentation claims.

***Fifth*,** Plaintiffs admit Rule 9(b) applies to their claims, but merely recite boilerplate allegations of the FAC and conclusorily state they are sufficient.

***Sixth*,** Plaintiffs fail to explain why or how the permissive approach to standing for unpurchased products should apply. The approach should not apply. And Plaintiffs have not met its requirements.

***Seventh*,** Plaintiffs fail to refute that their claims for injunctive relief, express warranty, breach of contract and damages under the CLRA fail as a matter of law.

The Court should dismiss Plaintiffs' FAC in its entirety, with prejudice.  Alternatively, the Court should strike Plaintiffs immaterial allegations in the FAC.

## I. PLAINTIFFS' CLAIMS FOR RELIEF SHOULD BE DISMISSED

### A. Plaintiffs' Claims Should Be Dismissed Because They Are Preempted

Plaintiffs cite *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109 (9th Cir. 2013) for its bedrock principle:  there is a "'narrow gap through which a state law claim must fit ….The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by [21 U.S.C.] § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman* [*v. Plaintiffs' Legal Committee*, 531 U.S. 341, 350 (2001)].'"  *Id.*, at 1120; *see* Opp., p. 5.  Plaintiffs, however, do not argue that their claims fit through this narrow gap, nor could they.  Instead, Plaintiffs ignore the standard and assert a series of conflicting, disjointed, and ultimately unpersuasive arguments as to why preemption should not apply to their claims.  Plaintiffs' arguments should be rejected.

#### 1. There is No Presumption Against Preemption Here

Plaintiffs conclusorily invoke the presumption against preemption.  But Plaintiffs fail to explain why their claims are entitled to it.  Plaintiffs' argument is superficially based on how they cast their claims for relief, not on their substantive theory of liability—technical non-compliance with an FDA policy statement. *See* Opp., p. 5.  The presumption is not so easily invoked.  It only applies if the state law involves "a field which the States have traditionally occupied." *Buckman Co. v. Plaintiff's Legal Committee*, 531 U.S. 341, 347 (2001).  The presumption is typically applied to longstanding traditional areas of state law, such as negligence resulting in personal injury. *See, e.g., Stengel v. Medtronic Inc.*, 704 F.3d 1224 (9th Cir. 2013).  It "is <u>not</u> triggered in areas where there has been a history of significant federal presence," such as here.  *U.S. v. Locke*, 529 U.S. 89, 108 (2000) (emphasis added).

#### 2. Plaintiffs' Claims Are Impliedly Preempted (21 U.S.C. § 337)

Plaintiffs admit that (1) the FDCA prohibits them from enforcing its provisions; and (2) Plaintiffs "sue for violations of the FDA's stated [natural] policy." (Opp., pp. 5-6.)  These concessions are dispositive.  By their own admission, Plaintiffs' claims would not exist without an FDA policy statement that would not exist without the FDCA.  Therefore, Plaintiffs cannot dispute that their claims

2

1  "exist solely by virtue of [the FDCA]." *Stengel v. Medtronic*, 704 F.3d 1224, 1230 (9th Cir. 2013)

2  Such claims are impliedly preempted under *Perez, Pom Wonderful*, and *Buckman*. *See* Motion, p. 6-7.

3  Nevertheless, Plaintiffs unsuccessfully argue implied preemption does not apply to their claims.

4  *First,* Plaintiffs argue there can be no implied preemption here because the NLEA includes an

5  express preemption provision that authorizes the FDA, *in certain limited circumstances*, to exempt

6  otherwise preempted state or local laws. (Opp., p. 6.; 21 U.S.C. § 343-1(b)). But Congress authorized

7  exemptions *only* where the state or local law: (1) would not cause any food to be in violation of a

8  federal requirement; (2) is designed to address a need for information not met by the federal

9  requirement; *and* (3) will not unduly burden interstate commerce. 21 U.S.C. § 343-1(b). The provision

10 does not override, and indeed is consistent with, the detailed, rigorous, comprehensive, and uniform

11 system for food labeling intended by Congress, which includes an express prohibition on private

12 enforcement. *See* 21 U.S.C. § 341; 21 U.S.C. 337. To the extent Congress's intent is not clear from

13 the provisions, the Code section itself is entitled "National *Uniform* Nutrition Labeling." *Id.* (emphasis

14 added). In any event, Plaintiffs fail to tie this limited exemption provision to Whole Foods' construct

15 of implied preemption, which is based on Congress's prohibition on private enforcement.

16 *Second*, Plaintiffs' reliance on the savings provision in Section 6(c)(1) of the NLEA is similarly

17 misplaced. Section 6(c)(1) states that the NLEA "shall not be construed to preempt any provision of

18 State law, unless such provision is expressly preempted" under 21 U.S.C. § 343-1; Pub. L. No. 101-

19 535, § 6(c)(1), 104 Stat 2353, 2364 (1990). But Section 6(c)(3), *which Plaintiffs do not cite*, plainly

20 limits Section 6(c)(1). It states, among other things, that Section 6(c)(1) should not be construed to

21 affect preemption *of any provision of the FDCA not amended by the NLEA* in 21 U.S.C. § 343-1. (*Id.*)

22 Because Whole Foods' implied preemption argument rests on provisions of the FDCA not amended by

23 the NLEA—specifically the FDCA's prohibition on private enforcement in 21 U.S.C. § 377—the

24 NLEA savings clause is irrelevant. *See Fraker v. KFC Corporation*, 2007 WL 1296571, *3-*4 (S.D.

25 Cal. April 30, 2007) (applying *Buckman* to find implied preemption based on 21 U.S.C. § 337).

26 *Third*, *Lockwood v. ConAgra Foods, Inc.* does not save Plaintiffs' claims. *Lockwood* relies on

27 a truncated quotation of Section 6(c)(3) to support a flawed reading that it applies only to food safety

28 warnings. 597 F. Supp. 2d 1028, 1032-33 (N.D. Cal. 2009). Such a reading fails to account for the

3

references to Section 6(a), 6(b), and 6(c)(1) which do not refer to food safety warnings.  Moreover, this flawed interpretation violates the well-established principle of statutory construction that courts may not construe statutes to create superfluous language.  *Duncan v. Walker*, 533 U.S. 167, 173 (2001).  When read as a whole consistent with this principle of statutory construction, Section 6(c)(3) compels the opposite conclusion—that Congress did *not* intend to limit Section 6(c)(3) to food safety warning requirements.  In any event, *Lockwood*: (1) relied on the flawed reasoning of *Farm Raised Salmon Cases*, which should be disregarded for the reasons set forth in Whole Foods' Motion, *see* Motion, p. 8, n. 4; and (2) predates controlling Ninth Circuit precedent cited in Whole Foods' Motion.

***Fourth***, Plaintiffs argue that their claims are not barred by implied preemption because they "borrow federal standards," "mirror the federal rules," and "parrot standards of the FDCA and its regulations."  To the contrary, these are reasons *for* implied preemption based on the FDCA's prohibition of private enforcement.  Whatever verb Plaintiffs use, by their own admission they "sue for violations of the FDA's stated [natural] policy."  (Opp., pp. 5-6.)  They are therefore improperly suing *because* conduct allegedly violates the FDCA.  *Perez v. Nidek*, 711 F.3d 1109, 1120 (9th Cir. 2013); *see also Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1175-76 (9th Cir. 2012), *cert granted*.  And their claims are preempted.[1]

### 3. Plaintiffs' Claims Are Expressly Preempted (21 U.S.C. § 343-1)

Plaintiffs admit that 21 U.S.C. § 343-1 expressly preempts state laws that are not identical to the federal food-labeling requirement.  (Opp., p. 4.)  Plaintiffs further admit, as set forth above, that under *Perez v. Nidek* this means they may only sue for conduct that violates the FDCA.  (Opp., p. 5.)  Plaintiffs then offer a series of meritless arguments, attempting to distance themselves from theories asserted in their own pleading and elsewhere in their Opposition.

---

[1] Plaintiffs fail to distinguish controlling case law.  Plaintiffs incorrectly state that the plaintiffs in *Buckman* did not allege state law claims.  (Opp., p. 7.)  They did.  531 U.S. at 343.  As did the plaintiffs in *Perez*.  722 F.3d at 1109.  Indeed, the very thrust of these cases is that district courts are required to look past the face of the claim and scrutinize the plaintiff's theory of liability to determine whether the claim "originates from, is governed by, and terminates according to federal law."  *Stengel v. Medtronic*, 704 F.3d 1224, 1230 (9th Cir. 2013).  Plaintiffs also state, without analysis, that controlling case law does not apply because the cases involve medical devices or conflicting federal claims.  (Opp., p. 8.)  Such conclusorily statements fail to refute Whole Foods' detailed arguments as to why principles of those decisions apply here.

1    *First,* the Court should reject Plaintiffs' assertion—made only in their express preemption
2    section—that Plaintiffs only "sue for violations of the FDA's stated policy [on the meaning of the term
3    'natural']." (Opp., p. 5.)  As set forth in Whole Foods' Motion, Plaintiffs do not allege their own
4    understanding of the term "natural" in their FAC. (Motion, p. 3.)  And Plaintiffs attribute to a
5    reasonable consumer a series of different meanings of "natural," including a different and inapplicable
6    meaning set forth by the USDA. (Motion, p. 4.)  Plaintiffs supplement these inconsistent definitions by
7    applying inapplicable USDA regulations, including "synthetic" in the context of organic foods (not at
8    issue here) and "minimally processed" in the context of meat and poultry (also not at issue). (*Id*.)

9    In the Opposition, Plaintiffs introduce the extreme idea of enforcing the Webster's Dictionary
10   definition of natural. (Opp., p. 14.)[2]  Elsewhere, Plaintiffs contend "natural" means "derived from
11   nature and thereafter minimally processed," even though the FDA expressly considered and elected not
12   to adopt the "minimally processed" element of the USDA definition. (Opp., p. 14; Motion, p. 11.)
13   Then, Plaintiffs conclude that "natural" means just "derived from nature." (Opp., p. 14.)  Plaintiffs
14   even argue that Whole Foods can be found liable based on any definition the Court adopts, even *one*
15   *the Court crafts on its own*. *See* Opp., p. 14, n. 9.  Such an incomplete, shifting, and open-ended theory
16   is not only inadequately plead, it is expressly preempted.  *See* Motion, p. 11.

17   *Second*, Plaintiffs fail to adequately address the fact that enforcement of the FDA's policy
18   statement itself is expressly preempted.  The cases Plaintiffs cite, with little analysis, are not controlling
19   and either fail to consider or do not properly credit the FDA's binding regulations governing the role of
20   the FDA's own policy statements.  *See* 21 C.F.R. § 10.85(j); *see also* 21 C.F.R. § 10.115.

21   *Third,* Plaintiffs fail to address Whole Foods' additional express preemption arguments.
22   Plaintiffs do not challenge Whole Foods' showing that Plaintiffs fail to adequately allege that SAPP
23   does not fall within the FDA's definition.  Moreover, Plaintiffs do not address the fact that their stated
24   concerns about SAPP do not implicate the FDA policy. (*See* Motion, p. 10.)  And, importantly,

---

[2] Webster's on-line dictionary includes the following definition of natural: "existing in nature and not made or caused by people." *See* http://www.merriam-webster.com/dictionary/natural.  Webster's plainly conflicts with the FDA and would exclude virtually everything in a modern supermarket. Even Pelayo admitted that a similar Webster's definition could not apply.  *Pelayo v. Nestle USA, Inc.*, 2013 WL 5764644, *12-13 (C.D. Cal. Oct. 25, 2013).

5

Plaintiffs concede that the use of SAPP in the baked goods is consistent with the FDA policy statement by admitting that "organic foods are natural by definition." (Opp., p. 12.) SAPP is permitted in organic foods for its undisputed purpose here (as a leavening agent). 7 C.F.R. § 205.605(b).

*Fourth,* Plaintiffs' off-hand assertion that express preemption does not apply because the FDCA "does not mention California's UCL, FAL, or CLRA" is a non-starter. (Opp., p. 4.) Plaintiffs cite no authority to support the contention that Congress must specifically enumerate every state statute and common law theory expressly preempted, and there is none.

### B. Plaintiffs' Claims Invade The Primary Jurisdiction Of The FDA

The parties agree on the applicable four-prong standard for invoking the primary jurisdiction doctrine under *Syntek Semiconductor v. Microchip Tech., Inc.,* 307 F.3d 775, 781 (9th Cir. 2002). (Opp., p. 11.) But Plaintiffs address only one disjunctive element of a single prong. Plaintiffs incorrectly argue that "Plaintiffs' allegations must not be barred by the doctrine of primary jurisdiction" because "Whole Foods has not shown that this Court is incapable of determining whether Whole Foods' labels are misleading." (Opp., pp. 8-9.) The question under *Syntek* is whether the Court should invoke prudential concerns to defer deciding the issue in dispute—whether the use of SAPP in baked goods is consistent with the FDA's ambiguous "natural" policy—to the agency responsible for creating the policy and administering the system of food-labeling. *Syntek*, 307 F.3d at 781. As part of that determination, the Court should consider whether resolution of the issues requires either FDA expertise or uniformity in administration. *Syntek*, 307 F.3d at 781. Either element is sufficient; both apply here.

Plaintiffs do not dispute the underlying contentions made by Whole Foods that support the need for FDA expertise here.[3] Plaintiffs cite a number of non-binding district court opinions and conclusorily assert that they apply here. None of the decisions cited by Plaintiffs considered the FDA's recent response letter, in which the FDA stated it expects a stakeholder petition that would require an agency response. (*See* Motion, p. 12-13.) Moreover, Plaintiffs fail to adequately distinguish the cases

---

[3] *See* Motion, p. 12 (identifying reasons for invoking the doctrine, including: (1) the complexity of the issue (as a matter of food science and FDA administrative procedure); (2) the fact that the FDA itself has struggled with the meaning of "natural" for decades; (3) the need to interpret the FDA's own policy statement (which itself provides little guidance); (4) the FDA's January 2014 response in which the FDA acknowledged the complexity of the issue and need for stakeholder involvement, and its expectation that its administrative process would be invoked by a stakeholder petition shortly).

6

Defendant's Reply in Support of Motion to Dismiss Plaintiffs' FAC and Motion to Strike
Case No. 4:13-cv-05222-VC

cited by Whole Foods in which the primary jurisdiction doctrine has rightfully been applied.  Plaintiffs argue that *Cox v. Gruma Corp.* should not apply because it involved the issue of whether GMOs are natural.  (Opp., p. 9.)  But Plaintiffs fail to explain how their theory of liability is meaningfully different from a GMO "natural" claim.  Like Cox, Plaintiffs allege that the manner in which the ingredient was derived rendered it inconsistent with the FDA's definition of "natural."  Like in *Cox*, the fact-finder will be required to apply an ambiguous, indeterminate, and largely circular FDA policy statement to an ingredient that is not specifically addressed in the policy.  The substantive issues relevant to primary jurisdiction here are not materially distinguishable from *Cox*.  Plaintiffs also fail to explain why *Hain Celestial* should not apply.  905 F. Supp. 2d 1013  (N.D. Cal. 2011).  Plaintiffs point to the fact that the FDA has not developed a definition of "natural" for cosmetics.  (Opp., p. 10.)   But Plaintiffs do not explain how the existence of the informal FDA policy statement (which itself provides minimal guidance) eliminates the need for FDA expertise.  It does not.

The Court should invoke the primary jurisdiction and dismiss or stay Plaintiffs' claims, at least until the FDA can consider the expected stakeholder petition.

### C.      Plaintiffs Have Fashioned Wholly Implausible Claims

#### 1.      Plaintiffs Fail to Plausibly Allege That A <u>Reasonable Consumer</u> Is Likely to Be Deceived By the Challenged Labels

Plaintiffs concede that the reasonable consumer standard applies to their false advertising claims.[4]  Accordingly, there is no dispute that Plaintiffs must plausibly allege that a "significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances" would be deceived by the challenged labels.  *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  Plaintiffs fail to establish that their allegations meet this standard.

*First,* Plaintiffs attempt to unwind their inconsistent allegations regarding the meaning of natural (in a section in the FAC entitled "Definition of 'All Natural'") by arguing that they need not plead a definition of the phrase at all.  (Opp., 11.)  This definitional requirement, according to Plaintiffs, is a "novel obstacle" created by a single court in *Pelayo*.  (*Id.*)  Plaintiffs' argument is pure semantics.

---

[4] Plaintiffs fail to address, and therefore concede, Whole Foods' arguments that the reasonable consumer standard applies to all prongs of the UCL and that a reasonable consumer analysis is required for Plaintiffs' common law fraud, negligent misrepresentation, and breach of express warranty claims.

*Pelayo*'s definitional analysis was no different than a standard, required analysis of a plaintiff's theory of *how* a reasonable consumer could be deceived by a representation. *Pelayo*, 2013 WL 5764644, at *12-*13 (C.D. Cal. Oct. 25, 2013). Plaintiffs admit *this* analysis is required. (*See* Opp., p. 15.)[5]

**Second,** Plaintiffs claim they alleged a plausible objective definition of "natural" because they refer–in their Opposition–to what they falsely contend is an FDA "ruling" that "the ingredient at issue is, in fact, not natural." (Opp., p. 11.) To support this contention, Plaintiffs cite an FDA warning letter to a non-party. (Opp., p. 11.) In the letter, the FDA advises Alexia Foods, Inc. of its preliminary view that the company's use of the phrase "all natural" on its vegetable products that used SAPP as a preservative was false or misleading under the FDCA. *See* http://www.fda.gov/ICECI/Enforcement Actions/ WarningLetters/ucm281118.htm. This letter does not assist Plaintiffs.

As an initial matter, an FDA warning letter is not a "ruling." FDA warning letters, like guidance documents, do not legally impose any obligation on the recipient (or the FDA, for that matter), let alone third parties. *See, e.g., Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 943-33 (D.C. Cir. 2012) (no cause of action based on warning letters); *see also CytoSport, Inc. v. Vital Pharm., Inc.*, 894 F. Supp. 2d 1285, 1296 (E.D. Cal. 2012) ("FDA warning letter is not a final decision by the FDA and its position may change after further investigation"; warning letter is insufficient evidence to avoid summary judgment); *see also* 21 C.F.R. § 10.115(e).

Moreover, the FDA's view was based on a different theory of deception. Alexia Foods, Inc. added SAPP as a *preservative* to *vegetables* labeled "all natural." Here, Plaintiffs challenge the use of SAPP as a leavening agent as part of *baking powder* in *cookies and cupcakes*. As discussed above, SAPP is permitted under the National Organic Program for use as a leavening agent. 7 C.F.R. § 205.605(b). And Plaintiffs admit "organic foods are natural by definition." (Opp., p. 12.) Plaintiffs' admission concedes a material distinction and precludes their reliance on the letter.

In addition, the FDA did not state that the vegetable labels would deceive a reasonable

---

[5] Scrutinizing "how" a reasonable consumer would be deceived is particularly appropriate where, as here and in *Pelayo*, Plaintiffs allege multiple inconsistent interpretations of the alleged misrepresentation. (*Id.*; FAC, ¶¶ 45-49.) The acknowledged existence of many inconsistent interpretations of "natural" is probative of the fact that there is no uniform meaning capable of being ascribed to a reasonable consumer as it conflicts with a claim of plausible deception of a significant portion of the general consuming public or targeted consumers.

consumer.  The FDA's view is necessarily based on a far lower standard of deception (one applicable in government enforcement actions) than the one Plaintiffs must meet here.  *See United States v. Strauss*, 999 F.2d 692, 696-697 (2d Cir. 1993)  ("We have construed section 343 broadly [in government enforcement actions], since the test [in such actions] is not the effect of the label on a reasonable consumer, but upon 'the ignorant, the unthinking and the credulous' consumer.")  Thus, FDA warning letter references to "misleading" labeling under the FDCA do not help Plaintiffs.

*Third*, Plaintiffs attempt to distinguish the dismissal of similar claims in *Werbel v. PepsiCo*, 2010 WL 2673860 (N.D. Cal. July 2, 2010) and *McKinnis v. Kellogg USA, Inc.*, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) because, according to Plaintiffs, "the challenged terms therein…, unlike here, allow for multiple meanings or no real meaning at all."  (Opp., p. 12.)  But Plaintiffs establish that very fact by alleging multiple inconsistent meanings of "natural."

*Fourth*, Plaintiffs claim *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699 (D.N.J. 2011) does not apply because "Plaintiffs do not allege that they relied on any FDA regulation…."  (Opp., p. 12.)  Instead, Plaintiffs confusingly contend, this case is different because "they allege that they relied on their interpretation…which comports with every other interpretation of the meaning of 'all natural,' including the FDA's."  (Opp., p. 12.)  To the extent this contention can be understood, such hair-splitting cannot possibly provide the basis for a meaningful distinction.

*Fifth*, Plaintiffs argue the Court should ignore the reasoning in *Kashi* because it was made at the summary judgment stage "following an extensive factual showing."  (Opp., p. 12.)  Plaintiffs, however, have conceded the relevant facts at issue in Kashi.  As set forth in Whole Foods' Motion, *Kashi* held that the plaintiffs failed to show that class members:  (1) have any kind of uniform definition of "all natural"; or (2) would view the presence of SAPP as violative of an "all natural" representation when SAPP is permitted in organic products.  2013 WL 3943265 (S.D. Cal. July 30, 2013).  Moreover, the Court credited Kashi's evidence that consumers equate "natural" with "organic" or hold "organic" to a higher standard.  2013 WL 3943265 (S.D. Cal. July 30, 2013).  These issues are not in dispute here.  Plaintiffs' shifting definitions of natural establish there is no uniform definition.  And Plaintiffs *admit* they would not view the presence of SAPP as violative of an "all natural" representation.  They expressly state that "organic foods are natural by definition" and do not dispute

1  that SAPP is permitted in organic foods for its use in the challenged products. (Opp., p. 12.) Plaintiffs'
2  concessions preclude their attempt to distinguish *Kashi*.

3  Plaintiffs also further attempt to distinguish *Kashi* on other immaterial grounds. Plaintiffs
4  argue *Kashi* does not apply because they "are only challenging the inclusion of one ingredient and one
5  advertising claim," but fail to explain why this matters. (Opp., p. 13.) Plaintiffs attempt to distinguish
6  the case on the ground that the challenged ingredients in *Kashi* comprised a small percentage (5% or
7  lower) of the challenged products, which consumers were found to view as consistent with the "all
8  natural" claim. (Opp., p. 12.) Plaintiffs do not allege that SAPP, itself a *sub*-ingredient of *baking*
9  *powder*, is present in any substantial amount in the challenge baked goods, nor could they.

10  **Sixth,** the cases Plaintiffs cite do not save their claims. Plaintiffs' reliance on *Williams v.*
11  *Gerber*, 552 F.3d 934 (9th Cir. 2008) is misplaced. *Williams* involved a Gerber product targeted to
12  toddlers that the court found was akin to candy. (*Id.*, at 396.) The court merely held that when there is
13  a clear, affirmative misrepresentation on the front of a package, the consumer is not required to look to
14  the side-package ingredient list to *correct* it. (*Id.*) The case is not applicable to subjective, amorphous
15  "all natural" representations. Nor is it applicable where, as here, the consumer read the ingredient list.
16  Numerous courts have limited *Williams* to its extreme facts. *E.g., Werbel v. Pepsico*, 2010 WL
17  2673860, at *4 (N.D.Cal. 2010); *Red v. Kraft Foods*, 2012 WL 5504011, at *3 (C.D.Cal. 2012).

18  Plaintiffs' repeated reliance on *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 29990766
19  (N.D. Cal. July 20, 2012) is similarly misplaced. As an initial matter, *Dreyer's* should be rejected
20  because it relied on *Williams*, which does not apply here as set forth above. *Dreyer's*, 2012 WL
21  2990766, at *10. Moreover, the court made what is a highly case-specific plausibility determination
22  based on different theories, with little analysis. *Dreyer's*, 2012 WL 2990766, at *7, *10-*11.

23  The plaintiffs in *Dreyer's* challenged representations of "All Natural Flavors," "All Natural Ice
24  Cream," and the use of the common or usual name of ingredients to conceal "artificial" ingredients.
25  *Dreyer's*, 2012 WL 299076, at *6, *10. Dreyer's argued that the ingredient lists reinforced that the "all
26  natural" part of the representations only applied to certain ingredients, i.e., the flavoring ingredients or
27  the components of ice-cream, as distinguished from additives such as chocolate chips. *Dreyer's*, 2012
28  WL 299076, at *6. There is no suggestion in the decision that the plaintiffs admitted reading the

1  ingredient lists, as Plaintiffs do here.  There is also no suggestion that the plaintiffs alleged multiple,
2  inconsistent meanings of the alleged misrepresentations.  And the plaintiffs did not challenge an
3  ingredient permitted in organic products after admitting organic products are "natural."

4  Plaintiffs also specifically argue *Dryer's* supports their contention that a reasonable consumer
5  would be surprised to find a common sub-ingredient of baking powder in the challenged cupcakes and
6  cookies. (Opp., p. 14.)   This more specific argument should be rejected for reasons similar to those
7  outlined immediately above—the cases are materially different.  *Dryer's* involved a consumer's
8  challenge to use of an *undisclosed alkalizing agent* for cocoa.  *Dryer's*, 2012 WL 2990766, at *11.
9  The court's determination that the plaintiffs plausibly pled deception of a reasonable consumer was no
10 doubt informed by the fact that the plaintiffs challenged a substance: (1) used in a process with which
11 consumers would have limited familiarity; (2) that was not disclosed in an ingredient list; and (3) that
12 plaintiffs never admitted reading.  *Dryer's*, 2012 WL 2990766, at *1, *11.  Here, in contrast, Plaintiffs
13 challenge an ingredient:  (1) that is a common component of baking powder, itself a substance routinely
14 used in consumer's homes for leavening; (2) that was disclosed in ingredient lists; (3) that Plaintiffs
15 admit reading.  *Dryer's* offers no reason to reject the reasoned result in *Pelayo* here.

16 Plaintiffs' reliance on *Kosta v. Del Monte Corporation*, 2013 WL 2147413 (N.D. Cal. May 15,
17 2013) and *Thurston v. Bear Naked, Inc.*, 2013 WL 5664985 (S.D. Cal. July 30, 2013) fail as well.  In
18 *Del Monte*, the court addressed, with little analysis, a situation more akin to Alexia Foods, Inc., where
19 fruits and vegetables contained alleged "artificial" preservatives.  *Kosta v. Del Monte Corporation*,
20 2013 WL 2147413, at *12 (N.D. Cal. May 15, 2013).  Moreover, like *Dryer's*, the court did not
21 address allegations of inconsistent definitions of "natural" or a plaintiff who challenged an ingredient
22 permitted in organic foods while admitting that organic products are natural.

23 *Thurston* was a companion decision to *Kashi* and supports Whole Foods for the same reasons.
24 The court certified certain claims not relevant here.  *Thurston v. Bear Naked*, 2013 WL 5664985, at *7
25 (S.D. Cal. July 30, 2013) (certifying claims as to products labeled "100% pure and natural" or "100%
26 natural" that contained an *undisclosed* "artificial" processing agent *not permitted in organic products*).
27 But, just as in *Kashi*, the *Thurston* court:  (1) refused to certify other claims that were based on
28 ingredients permitted in organic foods; and (2) found that the plaintiffs "fail[ed] to sufficiently show

that 'natural' has any kind of uniform definition among class members…." *Thurston*, 2013 WL 5664985, at *8.  It is unclear why Plaintiffs would even cite *Thurston*.

Plaintiffs fail to provide any basis for their false advertising claims to survive dismissal—they have utterly failed to plausibly allege deception of a reasonable consumer.  Plaintiffs do not address the fact that their fraud, negligent misrepresentation, and breach of express warranty claims must pass a similar reasonable consumer analysis.  Accordingly, all such claims should be dismissed.

**2.     Plaintiffs Fail to Plausibly Allege That <u>They</u> Were Deceived Or Injured**

Plaintiffs dispositively concede that they do not allege their own subjective understanding of the purported misrepresentation.  (Opp., p. 16.)  Plaintiffs make this admission based on the mistaken assertion that they need not "plead facts about their personal experiences" to support their CLRA and UCL claims.  (Opp., p. 16.)  As set forth in Whole Foods' Motion, Plaintiffs' statutory claims are subject to both:  (1) the threshold standing requirements of federal courts; and (2) the more narrow standing requirements of the statutes under which they sue.  *See* Motion, p. 14, n. 6, p. 16, citing, e.g., *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 326 n.9 (2011), *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 n.17 (2009).  *Kwikset* and *In re Tobacco II* are based in part on the judgment of California voters in passing Proposition 64 in 2004 that a plaintiff asserting a UCL claim must have suffered injury in fact and lost money or property as a result of the unfair competition.  *Id.*; *see also Kane v. Chobani, Inc.*, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ("As explained in *Kwikset*, the [California] voters enacted Proposition 64 in 2004 as a means of 'confin[ing] standing to those actually injured by a defendant's business practices and [] curtail[ing] the prior practice of filing suits on behalf of clients who have not used the defendant's product or service….'").  There is no shortage of case law reinforcing the actual reliance requirement for Plaintiffs' consumer protection claims.  *E.g., Swearingen v. Amazon Preservation Partners, Inc.*, 2014 WL 1100944 (N.D. Cal. March 18, 2014); *Brazil v. Dole Food Company, Inc.*, 2013 WL 5312418, *9 (N.D. Cal. Sept. 23, 2013).[6]  In any event, this argument

---

[6] *Williams v. Gerber*, 552 F.3d 934, 938 (9th Cir. 2008), cited by Plaintiffs, was decided before *Kwikset* and *In Re Tobacco II* and did not address the actual reliance requirement of putative class representatives.  *Neal v. NaturalCare, Inc.* 12-CV-00531 (C.D. Cal. Dec. 20, 2012), also cited by Plaintiffs, first determined on a motion to dismiss that the named plaintiff adequately alleged that she "relied on the Defendant's representations...." *Id.* at 3.  Plaintiffs appear to cite a passage from the class certification portion of the decision directed to standing for *absent* class members. *Id.*, at 11.  To the

would not save Plaintiffs' other claims, all of which except breach of contract require plausible allegations of actual reliance on the purported misrepresentation. *See* Motion, p. 14, n.6.

### D. Plaintiffs Fail to Plead Their Claims With The Required Particularity

Plaintiffs do not dispute that Rule 9(b) applies to all but their contract claim. However, apart from falsely asserting that they need not allege any facts about their own experiences to support their UCL and CLRA claims, addressed immediately above, Plaintiffs merely reiterate boilerplate allegations in the FAC and conclusorily assert they are sufficient. Plaintiffs gloss over the fact that they fail to allege: (1) their own subjective understanding of "all natural;" (2) any facts to show that SAPP does not satisfy any definition of natural alleged by Plaintiffs; (3) specifically when and where each purchase was made; (4) or *how* the package labels misled them or a reasonable consumer. All of these allegations are critical components of the who, what, when, where, and how of Plaintiffs' claims.

### E. Plaintiffs Lack Standing To Sue For Products Not Purchased

Plaintiffs fail to explain why the Court should not follow the many district court decisions that apply a bright-line rule and dismiss claims as to unpurchased products for lack of standing. The cases cited by Plaintiffs fall into the more permissive category described by Whole Foods and add nothing new. The bright-line approach is more consistent with standing principles and is particularly important in light of the narrower standing requirements imposed by Proposition 64. Moreover, subjecting defendants to discovery on unpurchased products is increasingly unfair to defendants as courts continue to refuse to certify such claims. *E.g., Caldera v. The J.M. Smucker Company*, 2014 WL 1477400 (C.D. Cal. April 14, 2014).

Plaintiffs assert that the unpurchased apple pie, cheesy biscuits, and corn bread are substantially similar to purchased cupcakes and cookies because they are "baked goods." Any plaintiff, however, can devise a high-level category. And even claims as to different "baked goods" have been rejected. *E.g., Larsen v. Trader Joe's*, 2012 WL 5458396 (N.D. Cal. June 14, 2012) (dismissing claims as to unpurchased crescent rolls even though purchased cookies, cinnamon rolls, and biscuits). Cases that permit claims as to unpurchased products generally are limited to different flavors. *E.g., Swearingen v.*

extent the court's discussion addresses requirements of the putative class representatives, it is in conflict with post-Proposition 64 cases, including *Kwikset* and *Tobacco II Cases*, and should be rejected.

*Yucatan Foods, L.P.*, 2014 WL 553537 (N.D. Cal. Feb. 7, 2014).  Plaintiffs lack standing to sue for the unpurchased products under any standard.  Such claims should be dismissed.

### F. Plaintiffs' Prayer For Injunctive Relief Fails

Plaintiffs argue "misleading label claims" are unique and that applying standing law would have "untenable" results.  Plaintiffs' claims are not unique and "untenable results" would neither follow nor provide a basis to ignore the law.  *See Morgan v. Wallaby Yogurt Company, Inc.*, 2014 WL 1017879, at *6 (N.D. Cal. March 13, 2014) ("[w]hile granting an injunction would undoubtedly further the California legislature's intent of protecting consumers, a federal court's power to grant relief is limited by the authority granted by the United States Constitution as interpreted by the courts."; rejecting untenable results argument and observing threat of money judgment influences behavior).  Moreover, *Wallaby* did not require a changed practice to dismiss a claim for injunctive relief.  (*Id.*)

### G. Plaintiffs' Unjust Enrichment Claim Fails

Plaintiffs admit unjust enrichment is not a cause of action in California.  Plaintiffs also do not dispute that they have an adequate remedy at law.  While some courts have allowed duplicative claims to proceed, Plaintiffs provide no justification for such duplication.  *See Dryer's*, 2012 WL 2990766, at *8 (dismissing *all claims* except UCL unlawful prong claim as duplicative).  Moreover, Plaintiffs have failed to plead any benefit unjustly conferred.  Plaintiffs' unjust enrichment claims should be dismissed.

### H. Plaintiffs' Warranty and Contract Claims Fail

Plaintiffs' express warranty and contract arguments are similar and therefore addressed jointly here.  Plaintiffs' attempt to import consumer protection case law to re-write a warranty and contract to exclude the ingredient list should be rejected.  *Williams* did not address contract or express warranty claims.  And traditional contract law applies to both claims.  *See Lehman Bros. Holdings, Inc. v. Mason McDuffie Mortg. Corp.*,  2013 WL 76285, at *4 (N.D. Cal. Jan. 4, 2013).  A party is bound by the terms of the *entire* contract.  *Circuit City Stores v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002).  Plaintiffs do not even adequately allege a breach because they fail to allege any facts showing that SAPP is inconsistent with any proffered definition of "natural."  Indeed, Plaintiffs admitted there was no breach by conceding that organic products are natural.  Moreover, Plaintiffs' multiple, inconsistent definitions of natural and failure to allege their own understanding of the term preclude a determination

that Plaintiffs defined the *exact* terms of the warranty.[7]

## I. Plaintiffs' Claim for CLRA Damages Fails

The new factual allegations Plaintiffs attempt to assert by declaration cannot be considered on a motion to dismiss. *See Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998); *Raffile v. Exec. Aircraft Maint.*, 2012 WL 4361409, at *3 (D. Ariz. Sept. 25, 2012). Moreover, the declaration raises more questions than it answers. Plaintiffs curiously *still* fail to produce the purported letter; thus, the Court still cannot evaluate its adequacy. Plaintiffs' counsel declares that the letter was sent long before Whole Foods was a party, suggesting if it was sent, it was not sent to the specific entity defendant, which is required. *Herron v. Best Buy Stores*, 2014 WL 465906, at *4 (E.D.Cal. Feb. 14, 2014). The address indicated is unaffiliated with either Whole Foods or the defendant at the time. Plaintiffs do not allege anywhere that the address used is Whole Foods' place of business within California, nor could they. Plaintiffs failed to allege adequate CLRA notice.

## II. THE COURT SHOULD STRIKE PLAINTIFFS' IMMATERIAL ALLEGATIONS

Plaintiffs offer no further justification for their claims as to unpurchased products and they should be stricken for the reasons set forth in Section I.E. above. Moreover, multiple, different representations that Plaintiffs never allege they or any class member saw or relied on are not necessary to support the claims of absent class members or commonality; they are irrelevant and immaterial.

## III. CONCLUSION

For the foregoing reasons, the Court should grant the Motion to Dismiss and Motion to Strike.

DATED: May 12, 2014                    SEYFARTH SHAW LLP

By: /s/ Joseph J. Orzano
    Joseph J. Orzano
    Attorneys for Defendant

17242323v.1

---

[7] The Court should also reject Plaintiffs' claim, made only in this section, that they "never alleged that they had (or had not) read the ingredient list on the Products packaging…." (Opp., p. 21.) Plaintiffs use "Products packaging" to mean the entire label, including the ingredient lists. (*Id.*) In the FAC, Plaintiffs admit that they "saw the *Products' packages*" before purchasing them. (FAC, ¶ 60.) And Plaintiffs reasonable consumer theory is based on review of the ingredient list. (FAC, ¶ 41.) ("a reasonable consumer would interpret the fine-print ingredient label in a way consistent with the front label representation.") This is also the theory Plaintiffs espouse throughout the remainder of the Opposition—that they knew SAPP was used, but did not know how it was derived.

15

Defendant's Reply in Support of Motion to Dismiss Plaintiffs' FAC and Motion to Strike
Case No. 4:13-cv-05222-VC