UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARY GARRISON, et al.,

    Plaintiffs,

v.

WHOLE FOODS MARKET GROUP, INC.,

    Defendant.

Case No. 13-cv-05222-VC

**ORDER**

Re: Dkt. No. 23

Plaintiffs Mary Garrison and Grace Garrison bring this putative class action against Defendant Whole Foods Market Group, Inc. ("Whole Foods"), alleging that several Whole Foods' products were misleadingly and unlawfully labeled "All Natural," when in fact they contain Sodium Acid Pyrophosphate ("SAPP"), a synthetic ingredient. Plaintiffs bring several common law claims as well as claims under California consumer protection statutes. On April 7, 2014, Whole Foods moved to dismiss Plaintiffs' First Amended Complaint and to strike certain allegations contained therein. The motion is GRANTED in part and DENIED in part.

**DISCUSSION**

**A. Preemption**

Whole Foods contends that Plaintiffs' claims are preempted by the federal Food, Drug, and Cosmetic Act ("FDCA"). The FDCA provides that only the federal government—and in limited cases, states—may bring suit to enforce its provisions. *See* 21 U.S.C. § 337. But it does not preempt all state law. *See* Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535, §6(c)(1) ("The Nutrition Labeling and Education Act of 1990 shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under . . . the Federal Food, Drug, and Cosmetic Act.").[1] Indeed, the Act expressly contemplates that states will enforce their own food labeling requirements. *See* 21 U.S.C. § 343-1(a). Such requirements, though, must

---

[1] The Nutrition Labeling and Education Act amended the FDCA.

be "identical" to those provided by the FDCA. *Id.* To survive a preemption challenge, therefore, a state-law food labeling claim must thread a "narrow gap": "The plaintiff must be suing for conduct that violates the FDCA (or else [the] claim is expressly preempted . . .), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted . . .)." *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (emphasis added and internal quotation marks omitted). Plaintiffs here have threaded this gap.

The FDCA generally prohibits misleading labeling. *See* 21 U.S.C. § 343(a) ("A food shall be deemed to be misbranded" if "its labeling is false or misleading in any particular."). Furthermore, although the FDA has not issued a regulation defining the word natural, it has articulated a "policy," defining natural to mean "that nothing artificial or synthetic . . . has been included in, or has been added to, a food that would not normally be expected to be in the food." *See* 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993); *see also* FDA Warning Letter to Alexia Foods, Inc. (Nov. 16, 2011), http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm281118.htm (describing SAPP as "a synthetic chemical preservative," and stating that the term "All Natural" on a food product containing SAPP "is false and misleading").[2] The conduct Plaintiffs allege—that Whole Foods misled customers by labeling as "All Natural" food products that contain SAPP, a synthetic ingredient—thus violates the FDCA. Plaintiffs have not, however, sued *because* the conduct violates the FDCA. Rather, their claims are based on California statutes as well as the common law, law that could exist "even if the FDCA were never passed." *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-02724-LHK, 2013 WL 5487236, at *7 (N.D. Cal. Oct. 2, 2013).

Accordingly, the Court joins the other courts of this district that have rejected the argument that claims based on a misleading "all natural" label are preempted. *See, e.g.*, *Pratt v. Whole Foods Mkt. California, Inc.*, No. 12-cv-05652 (EJD), 2014 WL 1324288, at *6 (N.D. Cal. Mar. 31,

---

[2] Plaintiffs request that the Court take judicial notice of this warning letter as well as a judicial opinion issued by the Central District of California. (*See* Docket No. 27). Whole Foods has not opposed this request. Plaintiffs' request is granted. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[U]nder Fed. R. Evid. 201, a court may take judicial notice of matters of public record." (internal quotation marks omitted)).

2014); *Ivie v. Kraft Foods Global, Inc.*, No. 12-02554 (RMW), 2013 WL 685372, at *13 (N.D. Cal. Feb. 25, 2013); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-cv-4387 (PJH), 2011 WL 2111796, at *10 (N.D. Cal. May 26, 2011); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1030-34 (N.D. Cal. 2009).

### B. Primary Jurisdiction

"The primary jurisdiction doctrine" is a discretionary doctrine that "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable,* 523 F.3d 1110, 1114 (9th Cir.2008). The FDA has repeatedly declined to adopt formal regulations regarding the meaning of the word "natural." *See Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898 (N.D. Cal. 2012); 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993). There is no clear indication the Agency intends to revisit this decision any time soon. There is, therefore, no "resolution of [the] issue" pending before the Agency to which the Court could defer. *See Clark,* 523 F.3d at 1110. Furthermore, "allegations of deceptive labeling do not require the expertise of the FDA to be resolved . . ., as every day courts decide whether conduct is misleading." *Jones*, 912 F. Supp. 2d at 898-99 (internal citation and quotation marks omitted); *see also Kosta v. Del Monte Corp.*, No. 12-cv-01722 (YGR), 2013 WL 2147413, at *10 (N.D. Cal. May 15, 2013) (collecting cases); *Jones*, 912 F. Supp. 2d at 898-99; *Lockwood*, 597 F. Supp. 2d at 1034.

### C. Failure To State A Claim

Whole Foods argues that Plaintiffs have failed to plausibly allege that "members of the public are likely to be deceived" by its labelling. (Mot. Dismiss 13 (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003) (internal quotation marks omitted))). Whether a reasonable consumer is likely to be deceived is a question of fact, and therefore typically not appropriate for resolution on a motion to dismiss. *See Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). While there are "rare situation[s] in which granting a motion to dismiss is appropriate," this case is not one of them. *See id.* at 939.

Whole Foods argues that Plaintiffs have neither alleged a single definition of "natural" that is shared by reasonable consumers nor explained how the inclusion of SAPP fails to adhere to that

3

1  definition. (*See* Mot. Dismiss 13-15). But Plaintiffs need not allege that every consumer shares
2  the same definition of "natural." Indeed, it is likely that reasonable consumers disagree about
3  precisely what "All Natural" means. *See* 58 Fed. Reg. 2302, 2407 (describing "the ambiguity
4  surrounding use of th[e] term" natural). Nevertheless, it is plausible that a reasonable consumer—
5  regardless of the precise definition of natural to which that consumer adheres—could interpret the
6  words "all natural" to exclude synthetic compounds such as SAPP, and therefore be misled by
7  Whole Foods' labelling. At this stage, that is sufficient. *See, e.g.*, *Vicuna v. Alexia Foods, Inc.*,
8  No. 11-6119 (PJH), 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) (holding that "whether a
9  reasonable consumer" of a product that contains SAPP "would likely be deceived by the
10  designation 'All Natural' is a factual dispute" that cannot be resolved at the motion to dismiss
11  stage); *see also Janney v. Mills*, No. 12-cv-03919 (WHO), 2014 WL 1266299, at *3 (N.D. Cal.
12  Mar. 26, 2014) (collecting cases in which "[c]ourts have found similar claims challenging the
13  terms 'all natural' and 'natural' to be sufficient basis for a cause of action under California's
14  consumer protection laws"); *Morales v. Unilever U.S., Inc.*, No. 13-cv-2213 (WBS), 2014 WL
15  1389613, at *7 (E.D. Cal. Apr. 9, 2014) (explaining that "the relevant question" in a deceptive
16  labelling case "is the meaning that consumers would attach to the term" at issue and that "this is
17  generally not a question that can be resolved on a motion to dismiss"); *Von Koenig v. Snapple*
18  *Beverage Corp.*, 713 F. Supp. 2d 1066, 1080 (E.D. Cal. 2010) ("[P]laintiffs allege that they were
19  deceived by the labeling of defendant's drink products as 'All Natural' because they did not believe
20  that the products would contain [high fructose corn syrup]. . . . [P]laintiffs have stated a plausible
21  claim that a reasonable consumer would be deceived by defendant's labeling.").

22  Whole Foods counters that it is not plausible that a reasonable consumer would be—or that
23  Plaintiffs actually were—misled by Whole Foods' "All Natural" representations, because SAPP
24  was listed on the ingredients list. (Mot. Dismiss 17). But as the Ninth Circuit explained in
25  *Williams*, the FDA does not "require[] an ingredient list so that manufacturers can mislead
26  consumers and then rely on the ingredient list to correct those misinterpretations and provide a
27  shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list
28  contains more detailed information about the product that confirms other representations on the

4

packaging."  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-940 (9th Cir. 2008); *see also Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1105 (N.D. Cal. 2012) (holding that the "ingredients list cannot be used to correct the message that reasonable consumers may take from the rest of the packaging").  Even if Whole Foods' argument were not foreclosed by *Williams*, it would still be unavailing here.  There is, at this stage anyway, no reason to believe that a reasonable consumer would know—or that the named Plaintiffs knew when they purchased the products at issue—that SAPP is synthetic.  The Court cannot, therefore, determine as a matter of law that a reasonable consumer would not be—or that the named plaintiffs themselves were not—misled into believing Whole Foods' products were all natural, as stated on their label.  *Cf. Janney*, 2014 WL 1266299, at *8 (N.D. Cal. Mar. 26, 2014) ("I will not conclude as a matter of law that a reasonable consumer should be expected to know that the ingredients high fructose corn syrup, high maltose corn syrup, and maltodextrin are not natural. The mere presence of these ingredients in the ingredients list does not clearly refute the explicit message that reasonable consumers may take from the rest of the packaging: that the products are made with *only* natural ingredients.").

Whole Foods notes that the United States Department of Agriculture permits the use of SAPP in products labeled organic.  (Mot. Dismiss 15).  *See* 7 C.F.R. § 205.605(b).  It argues that consumers hold organic products to the same or higher standards than those labelled "all natural," and therefore a reasonable consumer could not possibly be deceived by the inclusion of SAPP in "all natural" products, given that it is permitted in organic products.  (*See* Mot. Dismiss 15; Reply 9-10).  At this stage, however, there is no evidence in the record that reasonable consumers are even aware of the USDA regulations regarding the definition of the term "organic," let alone that these consumers assume that definition applies to "natural" foods as well.  *Cf. In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-md-2413 (RRM) (RLM), 2013 WL 4647512, at *15 (E.D.N.Y. Aug. 29, 2013) ("That 'organic' means GMO-free says nothing about whether a reasonable consumer would understand the term 'natural' to mean the same.  Nor can the Court conclude that a reasonable consumer, or any consumer, is aware of and understands the various federal agencies' views on the term 'natural.'"); *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 705 (D.N.J. 2011) ("It is simply not plausible that consumers would be aware of FDA regulations regarding 'nutrient

1  content' and restrictions on the enhancement of snack foods."). Furthermore, to the extent that

2  agency policies do inform consumers' understanding of the term "natural," as noted above, the

3  FDA has indicated that, in its view, it is misleading to label products "all natural" if they contain

4  SAPP. Whether a reasonable consumer would, in fact, be misled is a question of fact that is

5  unsuitable for determination at this stage.

**D. Rule 9(b)**

Whole Foods contends that Plaintiffs have not complied with Federal Rule of Civil Procedure 9(b), which requires that a party alleging fraud "must state with particularity the circumstances constituting" the fraud. (Mot. Dismiss 17-19).[3] "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged," such that defendants are given sufficient "notice of the particular misconduct" to enable them to "defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). Plaintiffs' complaint satisfies these requirements.

Plaintiffs allege that from November 8, 2009 to the present, the labels of several Whole Foods products "prominently included the term 'All Natural,'" and yet, because of the inclusion of SAPP, the products were not, in fact, all natural. (*See, e.g.*, Compl. ¶¶ 5, 50). They further allege that absent Whole Foods' misrepresentation, they would not have purchased the products. (*See, e.g.*, id. ¶ 13). The complaint lists the products Plaintiffs allege were deceptively labeled, identifies the precise representation they allege is misleading, and provides copies of the labels at issue. (*See id.* ¶¶ 3, 19, & Ex. A). These allegations are sufficient to give Whole Foods ample notice of the particular circumstances underlying Plaintiffs' claims against it. *See, e.g.*, *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1099-1101 (C.D. Cal. 2012) (rejecting arguments similar to those raised by Whole Foods and holding that allegations similar to those pleaded in this case satisfy Rule 9(b)); *Astiana*, 2011 WL 2111796, at \*5-6; *Von Koenig v. Snapple Bev. Corp.*,

---

[3] At the May 29, 2014 hearing, Plaintiffs clarified that their claims are based solely on the products specifically identified in their complaint. The Court therefore limits its consideration to those products.

713 F.Supp.2d 1066, 1077 (E.D. Cal. 2010); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1126 (N.D. Cal. 2010) ("[P]laintiffs have identified the particular statements they allege are misleading, the basis for that contention, where those statements appear on the product packaging, and the relevant time period in which the statements were used. As such, they have satisfied the requisite 'who, what, when, where, and how' of the misconduct charged." (internal quotation marks omitted)).

Although the bulk of Plaintiffs' allegations focus on the labels of Whole Foods' products, Plaintiffs also plead that Whole Foods' misrepresentations were "contained in various media advertising and . . . were reiterated and disseminated by officers, agents, representatives, servants, or employees" of Whole Foods. (Compl. ¶ 96). The complaint, however, does not contain any further details about these misrepresentations. Therefore, to the extent Plaintiffs seek to bring claims based upon statements other than those included on the labels of products identified in their complaint, these claims fail to satisfy Rule 9(b) and are dismissed with leave to amend. *See, e.g.*, *Von Koenig v. Snapple Bev. Corp.*, 713 F. Supp. 2d 1066, 1078 (E.D. Cal. 2010).

**E. Standing**

*1. Named Plaintiffs' Individual Standing*

The named plaintiffs have individual standing to bring claims against Whole Foods for deceptive labelling. Plaintiffs allege they are "very concerned about and try to avoid consuming foods that are not natural"; that they read and relied on the representation on the label that the products they purchased were "All Natural"; that because the products included SAPP, they were not all natural; and that had Plaintiffs known the products were not all natural, they would not have purchased them. (Compl. ¶¶ 9-13). The complaint thus plausibly alleges that because of Whole Foods' misleading labels, Plaintiffs spent money they otherwise would not have spent. This alleged economic injury is sufficient for Article III standing as well as standing under California law. *See, e.g.*, *Samet v. Procter & Gamble Co.*, No. 5:12-cv-01891 (PSG), 2013 WL 3124647, at *2-*3 & n.32 (N.D. Cal. June 18, 2013) (collecting cases). With respect to the products they purchased, the named plaintiffs have adequately alleged a "concrete and particularized" injury, caused by Whole Foods' conduct, that can be remedied by a damages award

7

from this Court. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

2. *Standing To Bring Claims Based On Products Not Purchased*

The named plaintiffs allege they purchased three "All Natural" products, but seek to bring claims on behalf of class members who purchased any of six products. (*See* Compl. ¶¶ 3, 10, 11). Whole Foods argues the named plaintiffs lack standing to bring claims on behalf of people who purchased different products—an issue about which Courts in this district disagree. *See Clancy v. The Bromley Tea Co.*, No. 12-cv-03003 (JST), 2013 WL 4081632, at *4 (N.D. Cal. Aug. 9, 2013) (collecting cases).

This Court concludes the named plaintiffs have standing to represent the unnamed class members. The named plaintiffs do not contend that they have *individual* standing to bring claims based on products they never purchased; they seek to represent a class, members of which have purchased each of the products upon which the claims are based. This is not unusual: "In a properly certified class action, the named plaintiffs regularly litigate not only their own claims but also claims of other class members based on transactions in which the named plaintiffs played no part." *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 768 (1st Cir. 2011). In fact, "[e]very time a lead plaintiff prosecutes an action on behalf of a class, she brings claims based on injuries she did not personally suffer—in other words, claims she could not have advanced individually. For example, the cancer-stricken lead plaintiff in an asbestos case brings claims based on other peoples' cancers; [and] a lead plaintiff, paralyzed from the waist down due to a car brake malfunction, can bring product liability claims on behalf of other people who were paralyzed from the neck down due to the same faulty brake design" in a different car. *In re Bear Stearns Mortgage Pass-Through Certificates Litigation*, 851 F. Supp. 2d 746, 778 (S.D.N.Y. 2012).

In *Gratz v. Bollinger*, the Supreme Court considered whether a student who applied to a university as a freshman and challenged the university's use of race in its admission process could represent a class that included not only freshmen but also transfer applicants. *See Gratz v. Bollinger*, 539 U.S. 244, 262 (2003). A student who seeks admission as a freshman cannot, of

8

1 course, be injured by a university's criteria for transfer admissions. The Court explained that
2 although it was unclear whether the question was one of standing or "the propriety of class
3 certification," the characterization of the issue was irrelevant. *See id.* at 263. The named plaintiff,
4 the Court held, had "clearly satisfied" both the standing requirements of Article III and the
5 adequacy requirement imposed on class action representatives because the university's "use of race
6 in undergraduate transfer admissions [did] not implicate a significantly different set of concerns
7 than . . . in undergraduate freshman admissions." *See id.* at 263, 265.

Here, the labels on the products purchased by the named plaintiffs are nearly identical to those on the other products identified in the complaint. (*See* Compl. Ex. A). Each label contains the same challenged "All Natural" representation in the same font in the same location. (*See id.*) Furthermore, Plaintiffs allege that each is false in the same way. (*See id.* ¶ 3). The unpurchased products thus do "not implicate a significantly different set of concerns than" those purchased by the named plaintiffs. If Whole Foods' labeling was misleading, the named plaintiffs suffered the same injury from the products they purchased as unnamed class members suffered from purchasing different products bearing the same label. By establishing that any of the labels were misleading, the Plaintiffs would necessarily establish that they all were. The named plaintiffs therefore have the "necessary stake in litigating" the class's claims required to confer standing. *See Camreta v. Greene*, 131 S. Ct. 2020, 2028 (2011); *see also Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001) ("When determining what constitutes the same type of relief or the same kind of injury, we must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry."); *Lanovaz v. Twinings N. Am., Inc.*, No. 12-cv-02646 (RMW), 2013 WL 2285221, at *3 (N.D. Cal. May 23, 2013) ("Because the claims for 51 of the varieties of tea are based upon the exact same label describing the same product, camellia sinensis, the court finds that Lanovaz has standing to sue on behalf of the purchasers of these teas."); *In re Bear Stearns Mortgage Pass-Through Certificates Litigation*, 851 F. Supp. 2d at 778 (holding that named plaintiffs had standing to bring claims based on securities they did not purchase where the defendant had "identified no substantive differences among the [securities] that would warrant

treatment of the tranches as separate securities . . . for Article III standing purposes"). Any further questions of the adequacy of the named plaintiffs or the typicality of their claims are more properly considered at the class certification stage. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975) ("Th[e] conclusion [that a named plaintiff has standing] does not automatically establish that [that plaintiff] is entitled to litigate the interests of the class she seeks to represent, but it does shift the focus of examination from the elements of justiciability to the ability of the named representative to fairly and adequately protect the interests of the class. (internal quotation marks omitted)).

   *3. Injunctive Relief*

Plaintiffs seeking injunctive relief from a federal court must allege not only that they have "suffered or [are] threatened with a concrete and particularized legal harm," but also that there is "a sufficient likelihood that [they] will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citation and internal quotation marks omitted). In a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). The named plaintiffs in this case allege that had they known the Whole Foods products they purchased contained SAPP, they would not have purchased them. (Compl. ¶ 13). Now they know. There is therefore no danger that they will be misled in the future. It may very well be that the legislative intent behind California's consumer protection statutes would be best served by enjoining deceptive labeling. *See Koehler v. Litehouse, Inc.*, No 12-cv-04055 (SI), 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012). But the power of federal courts is limited, and that power does not expand to accommodate the policy objectives underlying state law. *See Hollingsworth v. Perry*, 133 S.Ct. 2652, 2664 (2013) (explaining that California's policy-related interests in seeing ballot measures vigorously defended in court do not override federal standing limitations). Simply put, a federal court may not constitutionally issue an injunction unless a plaintiff has established "a real and immediate threat of repeated injury." *Bates*, 511 F.3d at 985 (internal quotation marks omitted). The named plaintiffs have not alleged—and cannot plausibly allege—such a threat. Therefore, they are limited to seeking damages. *See, e.g.*, *Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-cv-00296 (WHO), 2014 WL 1017879, at *6 (N.D.

Cal. Mar. 13, 2014). Their claim for injunctive relief is dismissed with prejudice.

### F. Unjust Enrichment

Courts in this district disagree about whether a plaintiff may allege a separate cause of action for unjust enrichment. *See Pratt*, 2014 WL 1324288, at *9 (citing cases). Although, in their memoranda, the parties analyze the issue under California law, Plaintiffs' unjust enrichment claim is a common law claim brought on behalf of a nationwide class. It is not clear at this stage, therefore, which state (or states') law should apply.[4] Regardless, the claim is duplicative of Plaintiffs' other statutory and common law claims. *See, e.g.*, *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("[P]laintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims."); *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 260 (2011) ("Because we have found that plaintiffs' remedies at law are adequate (counts alleged under the CLRA, the UCL, and common law fraud), a claim for restitution, alleging that [the defendant] has been unjustly enriched by its fraud, is unnecessary. This conclusion follows from the general principle of equity that equitable relief (such as restitution) will not be given when the plaintiff's remedies at law are adequate."). Plaintiffs' unjust enrichment claim is therefore dismissed with prejudice. *See Pratt*, 2014 WL 1324288, at *9; *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 966-967 (N.D. Cal. 2013).

### G. Breach of Contract

Whole Foods' only argument against Plaintiffs' breach of contract claim is that the labels at issue listed SAPP as an ingredient.[5] (Mot. Dismiss 23-24). As noted above, there is no evidence at this stage that a reasonable consumer would know that SAPP is a synthetic ingredient. More importantly, even if Plaintiffs knew that SAPP was synthetic (and did not comport with their definition of all natural), that would not mean that Whole Foods had not breached its contract. It would mean the contract was ambiguous. Where a contract is ambiguous, its meaning may not be

---

[4] The Court will separately consider, after briefing on the issue is complete, whether Plaintiffs may plausibly bring common-law claims on behalf of a nationwide class.
[5] It is not clear to the Court that the label on a food product constitutes a contract between a purchaser and the manufacturer of that product. Whole Foods, however, does not contest Plaintiffs' characterization, so the Court, for purposes of this motion, will assume its accuracy.

11

decided as a matter of law by a judge, but rather must be determined by a jury, based on "credible evidence concerning the parties' intentions."  *Cotran v. Rollins Hudig Hall Int'l, Inc.*, 17 Cal. 4th 93, 112 (1998).  Plaintiffs may therefore continue to pursue their breach of contract claim.

### H. Breach of Warranty Claim

Plaintiffs have alleged that the representation "All Natural" on Whole Foods' packaging constituted an "affirmation[ ] of fact"; that it was "part of the basis of the bargain" between consumers and Whole Foods; and that the warranty created by this representation was breached by the inclusion of SAPP, a synthetic ingredient.  (Compl. ¶¶ 10-13).  These allegations are sufficient to state a claim for breach of express warranty.  *See Weinstat v. Dentsply Int'l., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) ("[T]o prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." (internal quotation marks omitted)); *Vicuna*, 2012 WL 1497507, at *2 (holding that plaintiff stated a claim for breach of express warranty where food product was labeled "All Natural" but contained SAPP).

### I. CLRA

Whole Foods argues that Plaintiffs' CLRA claim must be dismissed because they failed to provide proper notice.  Plaintiffs allege that they notified Whole Foods of their claims under the CLRA as required by California law.  (Compl. ¶ 94).  Whole Foods has cited—and the Court has found—no authority for the proposition that a plaintiff must submit a copy of its notice to the Court along with its complaint or at the motion to dismiss stage.  Nor is there any reason to think that allegations regarding this notice are not subject to the general requirement that in considering a motion to dismiss, courts must accept a plaintiff's allegations as true and construe the complaint in the light most favorable to the plaintiff.  "Because plaintiffs in this case alleged that they sent the required notice to [Whole Foods] more than 30 days before they filed the [first] amended complaint and that [Whole Foods] failed to correct the alleged wrongs," they may proceed with their CLRA claim.  *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1261 (2009).

**J. Motion to Strike**

Whole Foods moves to strike Plaintiffs' allegations regarding products they did not purchase as well as several allegations regarding Whole Foods' marketing of "All Natural" products. Because Plaintiffs may bring claims based on products they did not purchase, Whole Foods' motion to strike allegations regarding these products is denied. As to the other allegations Whole Foods argues should be stricken, although Plaintiffs have not sufficiently alleged any claims with respect to Whole Foods' marketing—besides that contained on the labels themselves—it is not clear that these allegations "could have no possible bearing on the subject matter of the litigation." *Rosales v. Citibank, Federal Sav. Bank,* 133 F.Supp.2d 1177, 1180 (N.D. Cal. 2001); *see also In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007) ("Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delay tactic. . . . Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike."). Therefore, Whole Foods' motion to strike these allegations is also denied.

## CONCLUSION

For the reasons explained above, Whole Foods' motion to strike is DENIED. With respect to Plaintiffs' unjust enrichment claim and their claim for injunctive relief, Whole Foods' motion to dismiss is GRANTED with prejudice. To the extent Plaintiffs seek to bring claims based on representations not contained on the product labels themselves, Whole Foods' motion is GRANTED with leave to amend. In all other respects, the motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: June 2, 2014

_____
VINCE CHHABRIA
United States District Judge

13