Matthew R. Bainer, Esq. (S.B. #220972)
Molly A. DeSario, Esq. (S.B. #230763)
Courtland W. Creekmore, Esq. (S.B. #182018)
**SCOTT COLE & ASSOCIATES, APC**
1970 Broadway, Ninth Floor
Oakland, California 94612
Telephone:  (510) 891-9800
Facsimile:   (510) 891-7030
Email:   mbainer@scalaw.com
Email:   mdesario@scalaw.com
Email:   ccreekmore@scalaw.com
Web:     www.scalaw.com

Attorneys for Representative Plaintiffs
and the Plaintiff Classes

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY GARRISON and GRACE GARRISON, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WHOLE FOODS MARKET GROUP, INC.,<br><br>Defendant. | Case No. **3:13-CV-5222 VC**<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' FURTHER SUPPLEMENTAL BRIEF REGARDING NATIONWIDE CLASS APPLICATION OF CALIFORNIA COMMON LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:  n/a<br>Time:  n/a<br>Room:  4, 17th Floor<br>Judge:  Hon. Vince Chhabria |

## I. INTRODUCTION

At the hearing on the Defendant's Motion to Dismiss on May 29, the Court invited further briefing from Plaintiffs in light of Defendant's supplemental briefing asserting that Plaintiffs' nationwide class claims based on common law are unmanageable and fatal to class certification. While Defendant identifies one instance where a nationwide class was found unworkable, such does not follow that all nationwide fraud class actions are unmanageable as a matter of law. As discussed below, where there is overwhelming commonality amongst the overarching factual circumstances of the alleged fraud, a class action does not de facto become unmanageable simply because certain subsets of the class may have individualized questions of law governing their claims. misrepresentation at issue is of a simple, uniform character, the most important question is whether such misrepresentation is subject to common proof.[1]

## II. THE LAW REQUIRES THE COURT TO CONSIDER CLASS TREATMENT ONLY AFTER THE SUBMISSION OF A FULLY BRIEFED MOTION FOR CLASS CERTIFICATION

Courts in this district are reluctant to decide class certification issues at the pleading stage. *See, e.g., Dodson v. Tempur-Sealy Int'l, Inc.,* 2014 U.S. Dist. LEXIS 54071, *34 (N.D. Cal. Apr. 16, 2014); *Winans v. Emeritus Corp.,* 2014 U.S. Dist. LEXIS 29054, *33 (N.D. Cal. Mar. 5, 2014) ("Class allegations typically are tested on a motion for class certification, not at the pleading stage."); *Wilson v. Frito-Lay N. Am.,* 961 F. Supp. 2d 1134, 1148 (N.D. Cal. 2013) (same). The preferred course of action is to allow the parties to conduct discovery into certification issues and then address the issues on a developed record. *See In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (noting that "dismissal of class allegations at the pleading stage should be done rarely and that the better

---

[1] "Fraud claims . . . must be separated into two categories: [those] based on uniform misrepresentations made to all members of the class and fraud claims based on individualized misrepresentations. The former are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223, (2d Cir. N.Y. 2008) (quoting *Moore v. PaineWebber, Inc.* 306 F.3d 1247, 1253 (2d Cir. N.Y. 2002).

Plaintiffs' Further Supplemental Brief in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss

course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery.'") (citation omitted); *see also* 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Civil § 1785.3 (3d. 2005) (providing that the practice employed in the overwhelming majority of class actions is to address class certification issues only after an appropriate period of discovery). Here, the appropriateness of the application of the laws of the fifty states will depend on the facts of this case, and Plaintiffs must therefore be afforded the opportunity to develop a factual record. At this stage in the litigation, Plaintiffs are only able to rely on publicly available information. For these reasons, the Court should defer ruling on this issue until class certification.

### III. ANY POTENTIAL INDIVIDUALIZED ISSUES OF LAW WILL NOT, PER SE, BAR CERTIFICATION OF A NATIONAL CLASS HEREIN

The argument put forward by the Defendant here may be simply summarized as follows: not each class member's claim will be governed by the same legal standard. Thus, because there will be individual inquires of law, the class cannot, as a matter of law, be certified. The standards for certification of class action do not contain any such draconian rule.

Rule 23(a)(2) requires the Court to find questions of law or fact common to the class exist, a standard widely held to be construed "permissively" (*Hanlon*, 150 F.3d at 1019), with even "one significant issue common to the class [being] sufficient to warrant certification." *Dukes*, 509 F.3d at 1177. Moreover, class certification under Rule 23(b)(3) is satisfied if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

"Rule 23(b)(3) focuses on the relationship between common and individual issues." *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (2005) (finding common questions of law and fact to predominate) *abrogated on other grounds*; *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir. 1999) (predominance is determined not by *counting* the number of common issues but by weighing their *significance*). Further, the amount of time it takes to resolve whether a question is common to the class or individualized is not determinative as to

Plaintiffs' Further Supplemental Brief in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss

whether that legal question predominates. *Williams v. Mohawk Industries, Inc.* 568 F.3d 1350, 1357 (11 Cir. 2009) ("The Rule requires a pragmatic assessment of the entire action and all issues involved.").

In the case of shared common legal questions, Rule 23 does <u>not</u> mandate every question of law to be common, only that such individualized legal questions do not *predominate. Messner v. Northshore University HealthSystem*, 669 F.3d 802, 814 (7th Cir. Ill. 2012) ("Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.").

With regard to the common law of fraud, the 3rd Circuit provides the following instructive analysis:

> "A fraud claim may be common and not individualized for [23](b)(3) purposes if both the misrepresentation or omission requirement can be met with proof common across the class. Misrepresentations and omissions are more likely to be found common to the whole class if they are *written* as opposed to *oral*. In common law fraud, certification is appropriate where both the representations and the reliance are *arguably common. See e.g.*, *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283 (3d Cir. 1998)

Unless and until it is established that the individualized inquiries required herein, as a whole, predominate over the common inquiries again, as a whole, it cannot be said that certification of the class as proposed (even on a national basis) is improper.

### IV. COURT'S ROUTINELY CERTIFY CLAIMS WITH SOME ELEMENT OF INDIVIDUALIZED INQUIRY INVOLVED

In the present case, even if the common law of fraud for the 50 states should be applied to proposed subclasses, it remains true that the deceptive "all natural" representations made by the defendants adhere to an orchestrated strategy and represent a standardized sales pitch that tricked consumers into purchasing the products even though they contained synthetic ingredients. *See* First Amended Complaint ("FAC") ¶¶ 24-68. The allegation is that Whole Foods is engaged in a

discrete, uniform and simple form of fraudulent advertising.[2] The issues of manageability raised by Defendant do not militate against certification of a national class herein given the gross disparity between the factual background of this case versus the ones cited in Defendant's supplemental briefing of May 27, 2014.[3]

The Ninth Circuit follows "an approach that favors class treatment of fraud claims stemming from a 'common course of conduct.'" *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006) ("*First Alliance*") (quoting *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975). The Ninth Circuit has thus permitted class treatment in fraud cases where "a standardized sales pitch is employed." *First Alliance*, 471 F.3d 977, 991 (9th Cir. 2006). In *First Alliance*, for example, company salespersons followed a script called the "Track," which "was to be memorized verbatim by sales personnel and executed as taught," and the court found that a class-wide fraud finding was supported by that evidence. *Id*. at 985.

In fact, even the representations themselves need not be exactly "identical" for fraud claims to move forward. *In re American Continental Corp./Lincoln Savings Loan Securities Litigation*, 140 F.R.D. 425, 430 (D. Ariz. 1992) ("*Lincoln Savings*"). In *Lincoln Savings*, company representatives sold debentures to individual investors based on what the court described as a "centrally orchestrated strategy," and the court determined that "the exact wording

---

[2] "On each of the labels of the Gluten Free "All Natural" Products listed above, the term "All Natural" appears immediately beneath the Whole Food Market Gluten Free Bakehouse logo and immediately above the identification of the product (i.e., Vanilla Cupcakes). The labels are affixed to the Products in such a way so that the phrase "All Natural" appears on the top of the Products." FAC ¶ 52.

[3] *See* Defendant Whole Foods Market Group, Inc.'s Supplemental Brief Regarding Plaintiffs' National Class Allegations at 4, citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) ("*Mazza*") and *Rodriguez v. Instagram, LLC*, 2013 U.S. Dist. LEXIS 98627 (N.D. Cal. July 12, 2013) ("*Instagram*"), where the plaintiffs sought certification under consumer protection statutes for classes of consumers subjected to multi-faceted advertising and media campaigns involving much more complex reliance analysis than is required of the representations alleged against Whole Foods. *Mazza* involved Honda's collision management and braking system, and evidence at issue included manuals, instruction booklets, and television ads touting Honda's technology – in short, disparate information about the system. *Mazza*, 666 F.3d 581, 596 (9th Cir. 2012). In *Instagram,* the plaintiff sought to apply California law to adjudicate the rights of residents of the 49 other states – quite a different task than what the Plaintiffs here seek. *Instagram*, 2013 U.S. Dist. LEXIS 98627, *9 (N.D. Cal. July 12, 2013). To the extent that Judge Alsup found manageability problems with a nationwide breach of contract class, Plaintiffs explain *infra* how a common law fraud analysis does not have the same problems.

of the oral misrepresentations . . . is not the predominant issue." *Id.* at 430-431. The court therefore allowed the fraud claims to move forward based on that orchestrated strategy of misrepresentations. *Id.* at 441.

In the present case, the defendants make representations of a number of products all containing the deceptive "all natural" label. These labels are all identical and clearly represent a "centrally orchestrated strategy" and "standardized sales pitch." If the court allowed fraud claims to move forward in *First Alliance* and *Lincoln Savings*, where the representations were not identical but still met the orchestrated strategy criteria, there is no reason to believe this Court should not allow the present fraud claims to move forward – even if individualized inquiries exist as to issues of law - as the representations here are in fact exactly identical and meet the Ninth Circuit's test for fraud claims.

The same predilection towards certification can be found in other Circuits throughout the country. For example, Second Circuit has ruled that, even if reliance by the class is an issue, there is no rule which states that "a fraud class action cannot be certified when individual reliance will be an issue." *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 224 (2d Cir. 2008). Certification may be appropriate as long as plaintiffs can prove reliance "through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue)." *See Catholic Health Care West v. US Foodserv. (In re US FoodServ. Pricing Litig.)*, 729 F.3d 108, 120 (2d Cir. Conn. 2013).

Likewise, in *Rodriguez v. It's Just Lunch*, a recent Second Circuit District case, a class of plaintiffs sued a matchmaking services provider for fraud based on representations in a uniform script that told potential customers that the company already had two matches in mind for them, regardless of whether or not that was true. *Rodriguez v. It's Just Lunch, Int'l*, 2014 U.S. Dist. LEXIS 66409, *12 (S.D.N.Y. May 14, 2014). The court held that defendant It's Just Lunch International's ("IJL") representations regarding the multiple matches were "so fundamental" to their sales pitch and recruiting customers that it is reasonable to infer that "defendants intended for their representations to induce plaintiffs' reliance [and] that plaintiffs in fact relied on those

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

representations in becoming IJL customers." *Id.* at *33. The court then allowed plaintiffs' common law fraud claims to move forward.

As in *Rodriguez v. It's Just Lunch*, Defendants' claims of "all natural" are so fundamental to selling the kinds of food products at issue that the court can infer reliance. As the court there said, "it is 'hard to imagine a reasonable consumer' not being swayed" by Whole Foods "touting" its claims of "all natural." *See Rodriguez v. It's Just Lunch*, 2014 U.S. Dist. LEXIS 66409, *34. In today's health conscious universe, reasonable consumers will certainly rely on the language in food packaging to make choices related to the foods they put into their bodies. This is "common proof" that the present plaintiffs can establish reliance. Therefore, even with the reliance issues that the Second Circuit test poses, the present plaintiffs' common law fraud claims should still move forward.

## V. THE AUTHORITY RELIED ON BY DEFEDNANT DOES NOT MANDATE THAT THIS ACTION CANNOT BE CERTIFIED ON A NATIONAL BASIS

The single case relied on by Defendant does not support its position. Indeed, the Ninth Circuit's ruling illustrates that the specific potential applicability of the laws of multiple states does not *necessarily* operate as a per se bar to class treatment of make a national class unmanageable. The Ninth Circuit was recently very adamant on this point, stating:

> "The fact that two or more states are involved does not itself indicate that there is a conflict of law problem." See *Wash. Mut. Bank*, 24 Cal.4th at 919 (2001). A problem only arises if differences in state law are material, that is, if they make a difference in this litigation. Id. at 919-20; See *In re Complaint of Bankers Trust Co.,* 752 F.2d 874, 882 (3d Cir. 1984) ("Any differences in [the states'] laws must have a significant effect on the outcome of the trial in order to present an actual conflict in terms of choice of law.").

*Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 590-91.[4] In remanding for further consideration, the Ninth Circuit reminded the lower Court:

---

[4] *See also Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 922 "[T]he involvement of more than one state's law does not make a class action per se unmanageable, any variances among state laws must be examined to determine whether common questions will predominate over individual issues and whether litigation of a nationwide class may be managed fairly and efficiently."

> We express no view whether on remand it would be correct to certify a smaller class containing only those who purchased or leased Acura RLs in California, or to certify a class with members more broadly but with subclasses for class members in different states, with different jury instruction for materially different bodies of state law. See, e.g., *In re Computer Memories Sec. Litig.,* 111 F.R.D. 675, 685-86 (N.D. Cal. 1986).

*Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 594. Here, there has been (1) insufficient discovery to ascertain within how many states Defendant disseminated it's falsely advertised products, (2) no analysis as to what the controlling laws of each of those states are for the herein pled causes of action (3) no determination that there is actually any conflict between those standards (4) if present, no determination that this conflicts (if any exist) would be significant or reflective of an important public policy such that California law shouldn't be applied to the class a whole and (5) if significant, no determination that any such variations in individual state law could not be effectively managed within the class action device and included procedures. Plaintiff is confident that the claims brought on behalf of the national class will be shown, at the appropriate time, to predominate with common inquiries and will be able to be effectively managed using the tools available for the maintenance of class actions.

## VI. CONCLUSION

The Plaintiffs meet the criteria for fraud class action claims in the Ninth, Second, Third, and Eleventh Circuits because defendants' representations were uniformly orchestrated, represented a standardized sales pitch, and were so fundamental to selling their food products to consumers that reliance can be inferred. Consequently, the Plaintiffs' common-law based nationwide class allegations should not be dismissed at this early pleading stage. Rather Plaintiffs should be given ample time to conduct relevant discovery and fully brief this issue at the class certification stage.

Dated: June 12, 2014        **SCOTT COLE & ASSOCIATES, APC**

                     By:      /s/ Courtland W. Creekmore, Esq.
                                  Courtland W. Creekmore, Esq.
                                  Attorneys for the Representative Plaintiffs
                                  and the Plaintiff Classes

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

-8-
Plaintiffs' Further Supplemental Brief in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss